UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMERON TIETZ #827870,

               Plaintiff,               Case No. 20-10814

v.                              Paul D. Borman
                                United States District Judge

CORIZON HEALTH, INC., et al.,

               Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CORIZON HEALTH, INC., KIM FARRIS, P.A., KEITH PAPENDICK, M.D., AND JULIANA MARTINO, P.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 16)

### INTRODUCTION

In this action, Plaintiff Cameron Tietz, a prisoner currently housed in the Michigan Department of Corrections ("MDOC") Chippewa Correctional Facility ("URF") in Kincheloe, Michigan, asserts claims against 33 named Defendants, consisting of prison medical providers and MDOC employees, under 42 U.S.C. § 1983, for alleged violation of his rights under the First, Eighth and Fourteenth Amendments. Now before the Court is Defendants Corizon Health Inc., Kim Farris, P.A., Keith Papendick, M.D., and Juliana Martino, P.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16.) The motion is fully briefed. (ECF Nos. 19, 21.) The Court held a hearing using Zoom

videoconference technology on January 20, 2021, at which counsel for Plaintiff and Defendants appeared. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants Corizon Health Inc., Kim Farris, P.A., Keith Papendick, M.D., and Juliana Martino, P.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Original Complaint (ECF No. 1)

On March 27, 2020, Plaintiff Cameron Tietz, through his counsel, filed a Complaint initiating this matter. (ECF No. 1.) Plaintiff alleged, in part, that Defendants Corizon Health Inc. ("Corizon") and Kim Farris, P.A. ("Farris"), were liable under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights. (*Id.* Counts I & II, PgID 31-33.) Plaintiff also asserted claims against other named MDOC defendants for violations of his First and Eighth Amendment rights, retaliation, and conspiracy. (*Id.* Counts I to V, PgID 31-41.)[1]

---

[1] Plaintiff's Original Complaint also named "John Doe Physicians," "John Doe Nurses and Nurse Practitioners," "Deputy Warden John Doe," "Assistant Deputy Warden John Doe," and "Hearing Officer John Doe." (ECF No. 1.) Those "John Doe" defendants are not named in Plaintiff's First Amended Complaint. (ECF No. 12.)

**B.     Corizon Defendants' Motion to Dismiss (ECF No. 7)**

On June 8, 2020, Defendants Corizon and Farris filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to state any proper claim against Corizon or any deliberate indifference claim under the Eighth Amendment against Farris. (ECF No. 7.)

Plaintiff did not file a response to the Corizon Defendants' motion to dismiss, but instead filed his Amended Complaint on June 29, 2020, adding two additional named defendants, Keith Papendick, M.D. ("Papendick") and Juliana Martino, P.A. ("Martino"). (ECF No. 12, First Amended Complaint ("FAC").) *See* Fed. R. Civ. P. 15(a)(1)(B) (permitting a party to "amend its pleading once as a matter of course within … 21 days after service of a motion under Rule 12(b)"). Accordingly, Defendants' June 8, 2020 Motion to Dismiss the original Complaint is moot.

**C.     Plaintiff's First Amended Complaint**

In the Amended Complaint, Plaintiff alleges that Defendants Corizon, Farris, Papendick and Martino (the "Corizon Defendants") are liable under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights. (*Id.* Counts I & II, PgID 251-55.)[2] In addition, as in his original Complaint, Plaintiff also asserts claims

---

[2] Counts I and II are asserted against "Defendants Corizon and Healthcare Officials." (FAC, Count I & II, PgID 251-55.) The FAC defines "Healthcare Officials" as including not only Farris, Papendick and Martino, but also two MDOC nurses, Lisa

3

against other named MDOC defendants for violations of his First and Eighth Amendment rights, retaliation, and conspiracy. (*Id.* Counts I-V, PgID 251-60.) The MDOC claims are not discussed in this Opinion and Order.

Because this is a motion to dismiss, the facts recited below are stated as they are alleged in Plaintiff's Amended Complaint.

Plaintiff alleges that in 2013 or 2014, he developed symptoms including high fever, body aches, severe redness and swelling and burning pain in his leg, and while prison healthcare officials believed Plaintiff had the flu, after he was transferred to an external hospital, he was diagnosed with cellulitis. (FAC ¶¶ 45, 64, PgID 225, 229.) Plaintiff's infection was "successfully treated … with IV infused antibiotics," and the doctor "instructed Plaintiff that, if the same symptoms should ever occur again, he should inform the prison healthcare services that the infection is cellulitis and that similar treatment is required." (*Id.* ¶ 45, PgID 225.)

Plaintiff asserts that he first developed a hernia some time in 2016 while he was incarcerated at Macomb Correctional Facility ("MRF"), when he "noticed a ripping feeling in his abdomen." (FAC ¶ 51, PgID 226.) Plaintiff "was bedridden for weeks," and "developed a mass protruding from his abdomen that grew to

---

Adray and Nurse Duncan. (*Id.* ¶ 17, PgID 219.) Defendants Adray and Duncan are not part of this pending Motion to Dismiss.

approximately the size of a baseball." (*Id.*) Plaintiff sought medical care but "MRF Healthcare Officials" claimed it was an overdeveloped muscle and that there was no protrusion," and "no additional care was provided." (*Id.* ¶ 52, PgID 227.)

In March 2018, Plaintiff "began developing a high fever, body aches, severe swelling and redness in his leg, and burning pain in his leg." (*Id.* ¶ 64, PgID 229.) Plaintiff "recognized these symptoms as the same symptoms that were present before his cellulitis diagnosis in 2013-2014" and he "notified Defendant Healthcare Officials" of his "history and the treatment required." (*Id.*) "Defendant Healthcare Officials insisted that Plaintiff only had the flu and refused to provide him with proper treatment." (*Id.* ¶¶ 64-65, PgID 229.) Plaintiff continued to seek treatment the following day and thereafter and was subsequently transferred to an external hospital on or about March 18, 2018, where he was diagnosed with cellulitis a second time. (*Id.* ¶¶ 66-67, PgID 229-30.) The hospital physician "stressed that, if the issue were to happen again, Plaintiff must be admitted more quickly," and he "ordered that Plaintiff see a specialist once the infection had been treated and the swelling had receded in order to determine why the issue was recurring." (*Id.* ¶ 67, PgID 229-30.) When Plaintiff returned to MRF he was not provided with the proper antibiotics "for several days" and "was not allowed to see a specialist to determine why the issue was recurring." (*Id.* ¶¶ 68-69, PgID 230.) Plaintiff contends that Corizon and

5

Papendick "are responsible for ensuring MDOC inmates see the necessary specialists to treat serious medical needs" and "[p]ursuant to Corizon's policy to deny necessary care for non-medical reasons, like cost-saving, Defendant Papendick denied Plaintiff[] a specialist visit." (*Id.* ¶ 70, PgID 230.)

Plaintiff alleges that he developed a second hernia in approximately April of 2018, and again sought care from "MRF Healthcare Officials," who stated that "they do not treat hernias." (*Id.* ¶ 53, PgID 227.) Plaintiff alleges that Defendants Martino and Adray "knew Plaintiff had a hernia as well as a golf ball sized mass sticking out of his body and refused to follow up or prescribe any medication," and as a result, the hernia got worse. (*Id.*)

In approximately August of 2018, Plaintiff again developed "the same symptoms he had previously," and informed "MRF Healthcare Officials … of his two previous incidents with cellulitis and that the hospital physician had specifically instructed him to inform the staff that the antibiotics available at MRF are insufficient to treat this type of infection, so he must receive external care." (*Id.* ¶ 71, PgID 230.) The "Defendant Healthcare Officials" instead gave Plaintiff Tylenol and sent him back to his cell. (*Id.* ¶ 72, PgID 231.) Plaintiff continued to present with a fever and swollen red legs, and Defendant Farris "[d]espite knowledge of Plaintiff's repeated problems and history, … merely instructed the nurses to give

6

him an antibiotic and send him back to his cell." (*Id.* ¶ 73, PgID 231.) And "[w]hile Farris stated she would follow up with Plaintiff about the problems he was experiencing, she did not and neither did the nurses Duncan or Adray." (*Id.*) Plaintiff claims that Farris would "routinely wait several days" to see Plaintiff, and while he "repeatedly sought care from Defendant Healthcare Officials," he "was denied [care] for several days" and "[s]everal of his appointments were canceled without reason." (*Id.*)

Plaintiff later "collapsed and had to be carried to healthcare, where officials finally transferred him to the external hospital," where he remained for two weeks, receiving IV antibiotics. (*Id.* ¶¶ 74-75, PgID 231.) Plaintiff was then transferred to Duane Waters hospital, an MDOC hospital, where "one of the John Doe physicians made the decision to discontinue the IV antibiotics" and "sent Plaintiff back to MRF with only oral antibiotics." (*Id.* ¶ 75, PgID 232.)

Upon Plaintiff's return, he was reassigned from P.A. Farris to P.A. Martino as his medical provider. (*Id.* ¶ 76, PgID 232.) Martino told Plaintiff that "he needed to be on certain medications to strengthen his GI tract and prevent an internal infection," but Plaintiff was not given the proper medication "[d]espite kiting and requesting said medication[.]" (*Id.*) Plaintiff alleges that "Martino was aware of this

7

and acquiesced in the denial of prescribed medication despite knowledge of medical necessity and need to treat Plaintiff." (*Id.*)

Plaintiff further complains that he was still not allowed to see a specialist. (*Id.* ¶ 77, PgID 232-33.) He alleges that "Defendant Corizon maintains a policy, practice, or custom that requires Defendant Papendick to send prisoners to the hospital or a specialist but then refuses to follow through with the prescribed and recommended treatment plans in order to save money and minimize the amount of outside medical care provided to incarcerated individuals." (*Id.* ¶ 78, PgID 233.)

In approximately December of 2018, Plaintiff's second hernia "ripped further, causing daily groin pain and difficulty using the restroom," and Plaintiff was denied care "from Defendants Healthcare Officials[.]" (*Id.* ¶ 54, PgID 227.) Plaintiff's "two hernias continued to worsen" and he was bedridden for several weeks because of the pain. (*Id.* ¶ 55, PgID 227.) He continued to seek care and "eventually MRF Healthcare Officials conducted an X-ray examination," but Plaintiff did not receive a follow-up or results from the X-ray. (*Id.* ¶ 56, PgID 227.) Plaintiff continued to seek medical care, and "an MRF Healthcare Official stated 'I don't know why you keep coming over. We aren't going to help with a hernia.'" (*Id.* ¶ 57, PgID 228.)

In approximately January of 2019, Plaintiff again developed symptoms of suspected cellulitis, sought treatment from "MRF Healthcare Officials," which was

8

denied for several days before Plaintiff was transferred to an external hospital again. (*Id.* ¶ 79, PgID 233.) Plaintiff was examined by a specialist at the hospital who could not properly diagnose Plaintiff while his infection was still active, but "suspected that the infection was either cellulitis or a more severe form of streptococcal." (*Id.* at ¶ 80, PgID 233-34.) The hospital physician "ordered a long-term antibiotic to prevent the infection from recurring, but specifically ordered that Plaintiff also be placed on a probiotic" to avoid developing "a stomach infection." (*Id.* ¶ 81, PgID 234.) Plaintiff was denied access to probiotics and his stomach is "now in constant pain and his nutrition levels are off[.]" (*Id.* 82, PgID 234.)

Plaintiff alleges that he has since (at some unspecified time) developed a third hernia, causing "severe groin and testicular pain, … difficulties urinating [and] … ongoing constipation," which "Defendant Healthcare Officials" have treated by "plac[ing] Plaintiff on eight pills of stool softener per day" which "has caused severe diarrhea and even more pain." (*Id.* ¶¶ 58-59, PgID 228.) "Plaintiff continued to seek medical care and was given a second X-ray examination," but he "never received a follow-up or result." (*Id.* ¶ 60.) Plaintiff alleges that he "continues to suffer from these untreated issues." (*Id.* ¶ 61.)

9

**B.     Defendants Corizon, Farris, Papendick and Martino's Motion to Dismiss (ECF No. 16)**

On July 13, 2020, Defendants Corizon, Farris, Papendick and Martino filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16, Defs.' Mot.) Defendants argue that the alleged facts are insufficient to state a deliberate indifference claim against Defendants Farris, Papendick or Martino, and that Plaintiff's claims stem from a mere disagreement with medical judgment as opposed to deliberate indifference. Defendants further argue that Plaintiff fails to state a *Monell* claim against Corizon because he has not specified an unconstitutional policy nor linked that policy to any specific injury.

On August 3, 2020, Plaintiff filed a Response in Opposition to the Corizon Defendants' Motion to Dismiss. (ECF No. 19, Pl.'s Resp.) Plaintiff argues that he has pleaded sufficient factual allegations of a custom or policy of denying medical care for known and serious medical conditions until the conditions are so severe as to require emergency hospital intervention or otherwise refuse to treat serious medical conditions, or, alternatively a custom or policy of denying treatment by using the diagnosis of a less severe medical condition as a pretext for refusing to treat the known underlying condition. Plaintiff also argues that he has pleaded the necessary factual allegations to state a claim of deliberate indifference to a serious medical need against Defendants Farris, Papendick and Martino.

10

The Corizon Defendants filed a reply brief on August 13, 2020. (ECF No. 21, Defs.' Reply.) Defendants argue that a *Monell* claim cannot be established by an alleged pattern of illegal activity that involves only Plaintiff, and that Plaintiff's Amended Complaint acknowledges that the MDOC, and not Dr. Papendick, is the final decisionmaker regarding medical treatment. Defendants further argue that the Amended Complaint impermissibly alleges collective acts of constitutional violations by numerous defendants instead of alleged violations by individual defendants, and otherwise fails to state a proper claim because Plaintiff's Amended Complaint shows that he received an abundance of medical treatment and diagnoses by his prison healthcare providers.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

11

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue* Shield, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried* Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions will not carry a complaint past the motion-to-dismiss stage in the absence of supporting factual allegations, and a plaintiff whose complaint is deficient is not entitled to a fishing expedition for facts to support it. *See Iqbal*, 556

12

U.S. at 678-79. It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

### III.  ANALYSIS

#### A.    Plaintiff Fails to State a *Monell* Claim against Corizon

It is well established that a prisoner has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ); *see* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….")). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

13

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that Congress intended for municipalities and other local government units to be included among those "person[s] to whom § 1983 applies. 436 U.S. 658, 690 (1978). Although *Monell* addresses "municipal" liability specifically, it is well established that § 1983 liability claim under *Monell* also attaches to "a private entity that contracts to perform traditional state functions." *Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) ("A private entity … that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function.") (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996) (treating a private prison corporation as a person for purposes of § 1983).

A county or municipality may be found liable "under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Corizon, like a municipality, "cannot be held liable *solely* because it employs a tortfeasor – or, in other words, [Corizon] cannot be held liable under § 1983 on a *respondeat superior* theory." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Monell*, 436 U.S. at 691); *Winkler*, 893 F.3d at 904 ("Like a municipality, a government contractor cannot be held liable on

14

a '*respondeat superior* theory,' but rather 'for a policy or custom *of that private contractor*.") (quoting *Karnes*, 398 F.3d at 877 (emphasis in original)). Thus, to prevail in a § 1983 claim against a government contractor like Corizon, a plaintiff must show that the corporation had a "policy" or "custom" that caused the plaintiff's injury. *Monell*, 436 U.S. at 694. Specifically, a plaintiff must "identify the policy, connect the policy to the [corporation] itself[,] and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1994) (internal quotation marks and citations omitted). Corizon's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of [Corizon] under § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).

"To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactment or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleveland*, 799 F.3d 600, 621 (6th Cir. 2015); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "Official [] policy includes the decisions of a government's lawmakers, the acts of its

15

policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). An unwritten or informal practice can be a basis for liability under § 1983 and *Monell*, provided that it amounts to "a pervasive custom or practice" of which the defendant's policymakers "know or should have known," or is otherwise "attributable" to the defendant. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (internal quotation marks and citations omitted).

In this case, Plaintiff alleges the following in his Amended Complaint, with regard to Corizon's alleged "policies":

- "Defendant Corizon and Defendant Papendick are responsible for ensuring MDOC inmates see the necessary specialists to treat serious medical needs. Pursuant to Corizon's policy to deny necessary care for non-medical reasons, like cost-saving, Defendant Papendick denied Plaintiff's [sic] a specialist visit." (FAC ¶ 70, PgID 230.)

- "… Defendant Corizon through Defendant Papendick is responsible for ensuring outside specialist care is approved for prisoners with serious medical need. Defendants denied the hospital doctor's request that Plaintiff see a specialist." (*Id.* ¶ 77, PgID 232-33.)

- "Defendant Papendick as a supervisor and policymaker for Defendant Corizon exemplifies Defendant Corizon's policy to deny medically necessary [sic] for non-medical reasons. Plaintiff was told on several occasions that he needed to see a specialist, needed to be sent to the hospital faster, needed to have certain medications to treat his serious medical needs. Defendant Corizon maintains a policy, practice, or custom that requires Defendant Papendick to send prisoners to the hospital or a specialist but then refuses to follow through with the prescribed and recommended treatment plans in order

16

to save money and minimize the amount of outside medical care provided to incarcerated individuals." (*Id.* ¶ 78, PgID 233.)

- "At all times relevant to this complaint, Defendant Corizon's policy makers and decision makers maintained policies and practices that condoned and fostered the unlawful conduct of their defendant employees contracted to work in the MDOC, thereby demonstrating deliberate indifference to the constitutional rights of inmates." (*Id.* ¶¶ 158, 171, PgID 252, 254.)

These are all the allegations in the Amended Complaint addressing Corizon's alleged policies, practices or customs.

Plaintiff does not plead "the existence of an illegal official policy or legislative enactment" or "the existence of a policy of inadequate training or supervision." Rather, Plaintiff appears to plead "a custom of tolerance or acquiescence of federal rights violations" or "actions taken by officials with final decision-making authority." *See Baynes*, 799 F.3d at 621. Indeed, Plaintiff maintains in his Response brief that "*Monell* may be satisfied by an unwritten or informal practice that qualifies as a 'pervasive custom or practice,'" and that he has pleaded sufficient factual allegations of a "custom or policy of denying medical care for known and serious medical conditions until said conditions are so severe as to require emergency hospital intervention or otherwise refuses to treat serious medical conditions," and "[a]lternatively," that "Corizon has a custom or policy [of] denying treatment by using the diagnosis of a less severe medical condition as a pretext for refusing to treat the known underlying condition," by pleading "a persistent pattern of illegal

17

activity." (Pl.'s Resp. at pp. 11-12, PgID 368-69.) He also contends that he pleads that Defendant Papendick is a "policymaker for Corizon with final decision-making authority." (*Id.* at pp. 14-15, PgID 371-72.)

Defendants contend that these alleged "policies" amount to disputes over the adequacy of care and the exercise of discretion, and thus do not state a deliberate indifference claim. (Defs.' Mot. at pp. 4-5, 7 PgID 292-93, 295.) Plaintiff argues in response the "Defendants' failure to provide Plaintiff with the care of a specialist, failure to provide Plaintiff with proper antibiotics prescribed, and habitual delay and cancellation of appointments involve more than a mere dispute in medical judgment." (Pl.'s Resp. at p. 8, PgID 365.)

For the reasons set forth below, even if some of Plaintiff's allegations could be found to plausibly state a claim for constitutionally inadequate treatment, Plaintiff has not identified a Corizon policy which is "'the functional equivalent of a decision by the [entity] itself to violate the Constitution.'" *Connick*, 563 U.S. at 61 (quoting *Harris*, 489 U.S. at 395). Rather, the pleaded inadequate care and resulting injuries are alleged to be the result of decisions made by individual Defendants and/or other unnamed individuals.

### 1.  A custom of tolerance or acquiescence

In cases, such as this, "where no formal policy exists, the critical question is whether there is a particular custom or practice that although not authorized by written law or express municipal policy, is *so permanent and well settled as to constitute a custom or usage with the force of law*." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007) (internal quotation marks and citation omitted, emphasis added)). In such a case, a plaintiff must also show a direct causal link between the custom and the constitutional deprivation. *McClendon*, 255 F. App'x at 982.

To plausibly state a *Monell* claim based on "an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," the plaintiff must show: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and, (4) that the defendant's conduct was the 'moving factor' or direct causal link in the constitutional deprivation." *City of Chattanooga*, 398 F.3d at 429 (citing *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir.

1996)). Thus, "a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478.

The theory that underlies Plaintiff's Corizon-related allegations is that Corizon had a custom or practice of refusing to provide medical care in certain circumstances for non-medical reasons, such as to cut costs. (*See, e.g.,* FAC ¶ 70 ("Corizon's policy to deny necessary care for non-medical reasons, like cost-saving."), ¶ 78 ("Defendant Corizon maintains a policy, practice or custom that requires Defendant Papendick to send prisoners to the hospital or a specialist but then refuses to follow through with the prescribed and recommended treatment plans in order to save money and minimize the amount of outside medical care provided to incarcerated individuals.").) Plaintiff's Amended Complaint contains allegations with regard to specific instances of *his* medical treatment, but it does not allege any facts indicating specific prior instances of similar alleged misconduct by Corizon against other potential claimants. Indeed, in his Response, Plaintiff contends only that he has "identified several instances where *he* complained to healthcare about cellulitis symptoms" and that "healthcare ignored *his* condition until it deteriorated to the point that *he* required outside emergency medical attention," and that "[t]hese instances exhibit a repeat pattern of illegal activity of a number of years." (Pl.'s Resp. at p. 12, PgID 369 (emphases added).) He continues, "[l]ikewise, healthcare's refusal

20

to treat *Plaintiff's* hernias also demonstrates a pattern of illegal activity." (*Id.* (emphasis added).)

It is well settled that the Court cannot find "notice of a pattern of misconduct or the pattern itself *solely* from the mistreatment *of the plaintiff*." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (emphases added) (citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005)); *see also Northington v. Abdellatif*, No. 16-12931, 2018 WL3688665, at *10 (E.D. Mich. Aug. 3, 2018) (requiring "a pervasive pattern of such conduct that affected inmates *other than Plaintiff himself*" to support a deliberate indifference claim under *Monell*) (emphasis added). In other words, "[w]hen the plaintiff has none but his own experience upon which to rely, a sufficient claim against the municipality has not been made." *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015). Courts have reasoned that "[t]o do so risks 'collapsing … the municipal liability standard into a simple *respondeat superior* standard,'" which is prohibited. *Nouri*, 615 F. App'x at 296 (quoting *Thomas*, 398 F.3d at 432-33 (plaintiff's evidence of a pattern was based on the facts of his own case, which threatened to collapse the municipal liability standard into one based on *respondeat superior*)). Here, Plaintiff "only has [*his*] experience on which to rely, and that it not enough to state a claim against [Corizon]." *Id.*; *see also Burgess*, 735 F.3d at 478-79 (plaintiffs failed to set

21

forth any facts that there were prior instances of similar misconduct and thus "they simply have not demonstrated a pattern of inadequate investigation of similar claims as required"); *Wilber v. Cnty. of Jackson*, No. 13-cv-14524, 2016 WL 892800, at *10 (E.D. Mich. Mar. 9, 2016) (dismissing *Monell* claim where plaintiff failed to identify any prior incidents of deliberate indifference involving other prisoners).

The Court therefore finds that Plaintiff has failed to sufficiently allege the existence of a clear and persistent pattern of illegal conduct that could show Corizon had constructive or actual notice of potential constitutional violations, and Plaintiff's Amended Complaint therefore fails to allege a plausible *Monell* claim against Corizon based on an inaction or "custom-of-tolerance" theory. *See Winkler*, 893 F.3d at 902 ("Winkler discusses only Hacker's treatment, and therefore cannot establish that the County had a custom of deliberate indifference to serious healthcare needs of all the inmates incarcerated at the Detention Center.").

### 2. Defendant Papendick as a "Final Policymaker"

Defendants argue that Plaintiff's claim against Corizon fails under the "final policymaker" theory because neither Papendick, Farris nor Martino has "final decision-making power for Corizon, and the Plaintiff offers no regulations or written procedures that indicate otherwise." (Defs.' Mot. at pp. 9-10, PgID 297-98.) Plaintiff contends in his Response brief that Defendant Papendick, the Corizon Utilization

22

Manager,[3] "is responsible for managing outpatient referral requests" and "had the role of approving or denying specialty services such as physical therapy, assistive or therapeutic devices, and specialist visits to MDOC patients," and he claims that Papendick "is a policymaker for Corizon with final decision-making authority." (Pl.'s Resp. at pp. 14-15, PgID 371-72.)

To establish a *Monell* violation based on acts of an agent, a plaintiff bears the burden of demonstrating that the agent who made the decision that allegedly violated his rights is an official with final, unreviewable decision-making authority who deliberately chose an unconstitutional course of action from among various alternatives. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1985)). A municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the

---

[3] Plaintiff's Amended Complaint pleads that Papendick is "employed by Corizon and contracted by MDOC as the Utilization Manager," (FAC ¶ 11, PgID 218). At the hearing on this motion, Defendants' counsel confirmed that Dr. Papendick is employed by Corizon, and not the MDOC.

23

official policies of superior officials." *Feliciano*, 988 F.2d at 655 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Plaintiff identifies Defendant Papendick in his Amended Complaint as the "Utilization Manager" who is "responsible for approving necessary specialist visits and procedures for individuals incarcerated with the MDOC," and alleges that Papendick is a "supervisor and policymaker for Defendant Corizon," but Plaintiff does not specifically allege that Papendick was a policymaker with final decision-making authority. (See FAC ¶¶ 11, 78, PgID 218, 233.) In fact, Plaintiff's Amended Complaint alleges that Papendick followed Corizon policy, not set it. Plaintiff pleads that "[p]ursuant to Corizon's policy to deny necessary care for non-medical reasons, like cost-saving, Defendant Papendick denied Plaintiff's [sic] a specialist visit." (*Id.* ¶ 70 (emphasis added).) He also pleads that "Defendant Corizon maintains a policy, practice, or custom that *requires* Defendant Papendick to send prisoners to the hospital or a specialist but then refuses to follow through with the prescribed and recommended treatment plans in order to save money and minimize the amount of outside medical care provided to incarcerated individuals." (*Id.* ¶ 78 (emphasis added).) Thus, Plaintiff pleads that Papendick followed Corizon policy, but nowhere does Plaintiff plead that Papendick had "final authority to establish [Corizon] policy with respect to the action ordered." *See Pembaur*, 475 U.S. at 481. That Plaintiff

24

alleges that Papendick has authority to "approv[e] necessary specialist visits and procedures for individuals incarcerated with the MDOC" demonstrates that Papendick exercises discretion regarding medical care, and does not make him a final policymaker for Corizon. *See Feliciano*, 988 F.2d at 656 ("Discretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from *respondeat superior* liability.") (citation omitted); *see also Glenn v. Corizon Healthcare, Inc.*, No. 17-10972, 2019 WL 1970698, at * 2 (E.D. Mich. May 3, 2019) (finding Papendick and three other individuals were not "final decision-makers" because plaintiff "did not argue that they were policymakers with final decision-making authority," "[n]or is there any evidence in the record regarding the duties and limitations on authority of these four individuals").

Thus, the Court finds that Plaintiff also fails to sufficiently allege a plausible *Monell* claim against Corizon based on the "final policymaker" theory. Accordingly, Plaintiff's claims against Corizon are dismissed with prejudice.

## B.   Individual Capacity Claims Against Defendants Farris, Papendick, and Martino

To state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs." *Estelle*, 429 U.S. at 106. To prevail on a claim of deliberate indifference, a plaintiff must satisfy objective and subjective components. *Farmer v. Brennen*, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need, while the subject component requires that prisoner officials had "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component requires a showing that <u>each</u> defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). A plaintiff need not show that the defendant acted with the very purpose of causing harm, but most show something greater than negligence or malpractice. *Farmer*, 511 U.S. at 835. The standard has generally been equated with one of "recklessness." *Id.* at 836. Importantly, "the subjective component of a deliberate indifference claim must be addressed for *each* officer *individually*." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008) (alternations incorporated, emphases added) (quoting *Garretson*, 407 F.3d at 797). "So the evidence must show that the specific individual was aware of facts from

which he or she could infer a substantial risk of serious harm." *Winkler*, 893 F.3d at 891.

Defendants argue that Plaintiff fails to state a claim against Defendants Farris, Papendick, and Martino individually because "he has lumped each healthcare Defendant under Count I and II into the collective term 'Healthcare Officials,'" and he is required to show that each named defendant was personally involved in the activity that forms the basis of the complaint. (Defs.' Mot. at pp. 12-16, PgID 300-04.) Defendants contend that Farris, Papendick and Martino "have varying responsibilities, saw Plaintiff on different days, presumably had differing findings, and authority to treat/transfer Plaintiff." (*Id.* at pp. 15-16, PgID 303-04.) Defendants further argue that Plaintiff's claims raise at most a claim of medical malpractice because Plaintiff's Amended Complaint establishes that Plaintiff "was seen on various occasions by 'Healthcare Officials,' received multiple x-rays and medications, and was ultimately faced with treatment that he did not agree with." (*Id.*)

Plaintiff responds that he has "properly outlined specific and individual misconduct by Farris, Papendick, and Martino" in the Amended Complaint, and that each individual defendant appreciated Plaintiff's serious medical condition and

27

provided constitutionally inadequate medical care. (Pl.'s Resp. at p. 20, PgID 377.)[4]

He further contends that "[r]eferring to Defendants collectively in the Amended

Complaint does not violate Rule 8 … regarding pleadings so long as the complaint

'provides sufficient detail to put the defendants on notice of the claims.'" (*Id.* at pp.

24-25, PgID 381-82, citing, in part, *Horton v. City of Rockford*, 2019 WL 3573566,

at *3 (N.D. Ill. Aug. 6, 2019) ("[T]he Amended Complaint contains the what, where,

when, and how, but not the precise 'who' for every alleged act of misconduct. That

is sufficient at this stage.") and *Pelichet v. Gordon*, 2019 WL 4619742, at *18 (E.D.

Mich. Sept. 20, 2019) ("Although Plaintiffs consistently lump together Defendants

… without specifying how each, or any, participated in the alleged constitutional

violations, the actions of their Committee are specifically addressed by Plaintiffs

throughout the entirety of the [complaint].")[5].)

---

[4] Plaintiff also argues that he has satisfied the objective component of the deliberate indifference test – that he suffers from a sufficiently serious medical need. (Pl.'s Resp. at pp. 18-9, PgID 375-76.) Defendants do not address this component in their pleadings, and thus the Court assumes, for purposes of this motion, that Plaintiff has sufficiently pleaded the existence of a serious medical need.

[5] *Pelichet* is distinguishable from this case, however, as the defendants "lumped together" in *Pelichet* were the members of the Not Guilty by Reason of Insanity ("NGRI") Committee, a discrete, defined set of individuals who acted together to "review proposed releases of NGRI patients." *Pelichet*, 2019 WL 4619742, at *3 & n.8. Conversely, here, the "Healthcare Officials" defendants are an arbitrary group of defendants collected by Plaintiff, consisting of both Corizon and MDOC employees, who did not act as a group in treating Plaintiff, but rather had differing

The law is well settled that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"); *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").). Indeed, the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right[, and the court] must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and [] cannot ascribe the acts of all individual Defendants to each individual defendant." *Heyne v. Metropolitan Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (internal and end citations omitted); *see also Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed "Defendants" does not support a

roles in Plaintiff's treatment, with different authority to treat Plaintiff, and who most often separately treated Plaintiff at different times for different medical conditions.

29

reasonable inference that each Defendant is liable for retaliation."). A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion for judgment on the pleadings. *Iqbal*, 556 U.S. at 679.

While it is true, as Defendants point out, that under Counts I and II of Plaintiff's Amended Complaint, Plaintiff refers only broadly to "Defendant Healthcare Officials," who he defines earlier in the Amended Complaint as "collectively, Defendants Papendick, Adray, Duncan, Farris, and Martino," Plaintiff does discuss specific actions by the individual defendants earlier in the "Statement of Facts" section of the Amended Complaint. The Court therefore will analyze Plaintiff's allegations as to each individual defendant in this case. Defendants Farris, Martino and Papendick cannot be held liable under § 1983 unless Plaintiff has alleged that each defendant was personally involved in the alleged constitutionally inadequate medical care provided to Plaintiff or that each defendant otherwise encouraged or condoned others in providing such inadequate medical care. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Without providing specific factual allegations illustrating how each specific Defendant violated Plaintiff's Eighth Amendment rights, Plaintiff will fail to "nudge[] the [] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

30

### 1. Defendant Farris

Defendant Farris is a physician's assistant employed by Corizon. (FAC ¶ 13, PgID 218.) Looking at the specific allegations in Plaintiff's Amended Complaint as to Farris, Plaintiff alleges, with respect to his complaints about hernias, only that Farris (along with Martino and MDOC nurses Adray and Duncan) "with knowledge of Plaintiff's serious medical needs, denied medical treatment to Plaintiff." (FAC ¶ 62, PgID 228.) However, Plaintiff otherwise only generally refers to "MRF Healthcare Officials," or specifically to Defendants Martino and/or Adray, when describing his medical treatment for hernias in his Amended Complaint. Importantly, Plaintiff fails to plead <u>any</u> acts and/or failure to act specifically by Farris with regard to this medical condition. (See FAC ¶¶ 51-61.) Thus, given the lack of substantive allegations against Farris in the Amended Complaint, the Court finds that Plaintiff fails to state a claim against Defendant Farris with respect to Plaintiff's Eighth Amendment claims regarding his hernia condition.

With regard to Plaintiff's complaints about "streptococcal infection," Plaintiff alleges that, "[i]n approximately August of 2018:"

> the healthcare staff called Defendant Farris, the medical provider on call when Plaintiff continuously presented with a fever and swollen red legs. Despite knowledge of Plaintiff's repeated problems and history, Defendant Farris merely instructed the nurses to give him an antibiotic and send him back to his cell. While Farris stated that she would follow up with Plaintiff about the problems he was experiencing, she did not

31

and neither did the nurses Duncan or Adray. Farris would routinely wait several days, while Plaintiff continued to have a fever as well as swollen, painful, and red legs spreading to his stomach causing him intense pain and discomfort that prevented him from being able to move freely. On several occasions he had to go to the hospital as a result of these delays with one hospital visit lasting a month.

(FAC ¶¶ 71, 73, PgID 231.) Plaintiff pleads that "[a]fter his hospitalization [in approximately August of 2018], [he] did not see Defendant Farris anymore as his medical provider." (*Id.* ¶ 76.)

This is the entire scope of Plaintiff's Eighth Amendment allegation specifically against Farris. The issue is whether this pleading adequately states an Eighth Amendment claim against this defendant. Plaintiff pleads that Farris, despite knowledge of Plaintiff's "repeated problems and history," prescribed an antibiotic, then failed to follow up with him as promised and delayed his treatment, and as a result he ended up in the hospital. (FAC ¶ 73, PgID 231.) Plaintiff argues that, at a minimum, he has pleaded "grossly inadequate care." (Pl.'s Resp. at p. 22, PgID 379.) Grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 855 (6th Cir. 2002). Accepting all of Plaintiff's allegations against Farris as true, the Court finds that Plaintiff has failed to adequately plead an Eighth Amendment claim against Defendant Farris with regard to her treatment of Plaintiff for his complaints of "fever

and swollen red legs" "in approximately August of 2018." He pleads that she prescribed an antibiotic, and while he complains treatment was not prompt or as timely as he thinks it should have been, he does not plead an absence of medical care or treatment. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "[A]llegations 'that more should have been done by way of diagnosis and treatment' and 'suggest[ions]' of other 'options that were not pursued' raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rinehart v. Scutt*, 894 F.3d 721, 741 (6th Cir. 2018); *see also Briggs v. Oakland Cnty.*, 213 F. App'x 378, 385 (6th Cir. 2007) (finding no deliberate indifference where the nurse "perceived a lesser risk of serious harm to [the inmates'] health" than what he was actually suffering from and "acted under that belief").

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's Eighth Amendment claims against Farris with prejudice.

## 2. Defendant Martino

Defendant Martino is also a physician's assistant employed by Corizon. (FAC ¶ 14, PgID 219). With regard to Martino's treatment of Plaintiff for his hernias, Plaintiff alleges:

> In approximately April of 2018, Plaintiff developed a second hernia that grew to protrude near his navel. Plaintiff again sought care from MRF Healthcare Officials and was explicitly told that they do not treat hernias. Plaintiff attempted to just live with the pain but was struggling. Defendant Martino and Defendant Adray knew Plaintiff had a hernia as well as a golf ball sized mass sticking out of his body and refused to follow up or prescribe any medication. As a result the hernia got worse. Plaintiff filed a grievance on the issue.
>
> ***
>
> Defendants Adray, Farris, Martino and Duncan, with knowledge of Plaintiff's serious medical needs, denied medical treatment.

(FAC ¶¶ 53, 62, PgID 227-28.) Plaintiff's counsel conceded at the hearing that he does not know who made the statement that "they do not treat hernias." While this allegation may give rise to the possibility that *someone* acted improperly in connection with Plaintiff's medical treatment, it does not support a plausible claim that Defendants Farris, Martino or Papendick were involved. *See Iqbal*, 556 U.S. at 679 (explaining that a complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8).

34

However, accepting Plaintiff's allegations as true, that Martino "knew Plaintiff had a hernia as well as a golf ball sized mass sticking out of his body and refused to follow up or prescribe any medication" and "[a]s a result the hernia got worse," the Court finds that Plaintiff has sufficiently pleaded an Eighth Amendment violation against Martino based on her alleged denial of care regarding this April of 2018 incident only. *See, e.g., Colton v. Scutt*, No. 10-cv-13073, 2011 WL 3320484, at *6-7 (E.D. Mich. June 20, 2011) (plaintiff's claims that "he informed [the defendant] on at least two occasions that he was in pain almost daily from his hernia, that the pain bothered him at times when he urinated, and that despite his complaints [the defendant] ignored his concerns and failed to examine his hernia" are sufficient to state an Eighth Amendment claim of deliberate indifference), *report and recommendation adopted by*, 2011 WL 3320528 (E.D. Mich. Aug. 2, 2011).

With regard to Plaintiff's "streptococcal infection" claim against Martino, Plaintiff alleges only that after Plaintiff was hospitalized around August of 2018:

> [Plaintiff] was reassigned [from Defendant Farris] to Defendant Martino. Defendant Martino had full knowledge of his serious medical needs and specifically told him that he needed to be on certain medications to strengthen his GI tract and prevent an internal infection. Despite kiting and requesting said medication described by Defendant Martino and grieving the situation, Plaintiff was not given the proper medication. As his medical provider Defendant Martino was aware of this and acquiesced in the denial of prescribed medication despite knowledge of medical necessity and need to treat Plaintiff.

35

(FAC ¶ 76, PgID 232.) Plaintiff otherwise pleads generally regarding "Healthcare Officials," which, as explained above, is not sufficient to state a claim as to Defendant Martino specifically.

Plaintiff pleads that Martino advised him that he needed to be on certain medications "to strengthen his GI tract" but that he was not given the proper medications. The Sixth Circuit has held that the denial of a prescription medication can form the basis of a finding of deliberate indifference. *See Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (prison nurse refused to give prisoner his prescribed pain medication and a prisoner who suffers pain needlessly when relief is readily available has a cause of action for deliberate indifference); *but see Taylor v. First Med. Mgmt.*, No. 18-5282, 2019 WL 1313828, at *2-3 (6th Cir. Feb. 21, 2019) (finding that plaintiff's "conclusory allegations" that two doctors "violated his Eighth Amendment rights when they 'fail[ed] to provide [him] with pain medication and antibiotics and intentionally interfered with [his] pain medication once pr[e]scribed," "are insufficient to state a claim for relief"). Here, the prescribed medication Martino recommended was allegedly "to strengthen [Plaintiff's] GI tract and prevent an internal infection," not a pain medication, and Plaintiff does not plead that Martino denied the prescription, just that he was not given the "proper

prescription" by someone. The Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant Martino with regard to this treatment.

Thus, the Court grants Defendants' motion and dismisses Plaintiff's claims against Martino, except for his claim against Martino based on her alleged denial of care in April of 2018 for his hernia condition only, which may proceed.

### 3. Defendant Papendick

Plaintiff alleges that Defendant Papendick is Corizon's "Utilization Manager" "responsible for approving necessary specialist visits and procedures for individuals incarcerated with the MDOC." (FAC ¶ 11, PgID 218.) Plaintiff does not allege any claims specifically against Defendant Papendick with regard to his complaints about his treatment regarding his hernias. (See FAC ¶¶ 51-63.) Accordingly, given the absence of substantive allegations against Papendick in this part of the Amended Complaint, the Court finds that Plaintiff fails to state a claim against Defendant Papendick with respect to his Eighth Amendment claims regarding his hernia condition.

With regard to his claims regarding a "streptococcal infection," Plaintiff alleges that in March of 2018, he was hospitalized for cellulitis for the second time and the doctor in the hospital "ordered that Plaintiff see a specialist once the infection had been treated and the swelling had receded in order to determine why the issue

was recurring." (FAC ¶¶ 66-67, PgID 229-30.) Plaintiff alleges that "Defendant

Corizon and Defendant Papendick are responsible for ensuring MDOC inmates see

the necessary specialists to treat serious medical needs" and "[p]ursuant to Corizon's

policy to deny necessary care for non-medical reasons, like cost-saving, Defendant

Papendick denied Plaintiff's [sic] a specialist visit"  (*Id.* ¶ 70.)

Plaintiff further alleges that after he was hospitalized in or around August of

2018, "[d]espite the hospital physician's order, Plaintiff was also still not allowed to

see a specialist to determine why the issue was recurring," and that "Defendant

Corizon through Defendant Papendick is responsible for ensuring outside specialist

care is approved for prisoners with serious medical need" and "Defendants denied

the hospital doctor's request that Plaintiff see a specialist." (*Id.* ¶ 77, PgID 232-33.)

Plaintiff also alleges:

> Defendant Papendick as a supervisor and policymaker for Defendant
> Corizon exemplifies Defendant Corizon's policy to deny medically
> necessary [sic] for non-medical reasons. Plaintiff was told on several
> occasions that he needed to see a specialist, needed to be sent to the
> hospital faster, needed to have certain medications to treat his serious
> medical needs. Defendant Corizon maintains a policy, practice, or
> custom that requires Defendant Papendick to send prisoners to the
> hospital or a specialist but then refuses to follow through with the
> prescribed and recommended treatment plans in order to save money
> and minimize the amount of outside medical care provided to
> incarcerated individuals.

(*Id.* ¶ 78, PgID 233.)

Accordingly, the issue, taking Plaintiff's allegations as true, is whether Dr. Papendick's alleged failure to refer Plaintiff to a specialist two times following Plaintiff's treatment at a hospital constitutes constitutionally inadequate medical treatment. Defendants argue this "non-authorization" is merely a disagreement in the course of medical treatment. (Defs.' Mot. at p. 4, PgID 292.) Plaintiff counters that "[n]o reasonable doctor would deny a patient with chronic and persistent symptoms access to a specialist for a reason as arbitrary as costs savings." (Pl.'s Resp. at p. 24, PgID 381.)

As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983. *See Estelle*, 429 U.S. at 107; *see also Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) ("But a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim."). Additionally, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5.

Plaintiff alleges he received treatment at the hospital and at the MDOC for cellulitis in March and August of 2018 but that Papendick did not follow through

with the recommendations from the hospital staff that he see a specialist to determine why the issue was recurring. The Court finds that Papendick's alleged decision not to refer Plaintiff to a specialist following those two hospitalizations and treatment implicate medical judgments and fails to state an Eighth Amendment claim. *See Mitchell*, 553 F. App'x at 605 (differences of opinion between prison doctors and a specialist's recommended treatment did not establish deliberate indifference); *Lowe v. Prison Health Serv., Inc.*, No. 13-10058, 2015 WL 5675748, at *6 (E.D. Mich. Sept. 28, 2015) (plaintiff's claims that defendants failed to refer him to an off-site specialist "merely presented a difference of medical opinion, which does not generally fall within the scope of an Eighth Amendment claim"); *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.").

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's claims against Defendant Papendick with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants Corizon Health Inc., Kim Farris, P.A., Keith

Papendick, M.D., and Juliana Martino, P.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16.)

Specifically, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims against Defendants Corizon Health, Inc., Kim Farris, P.A., and Keith Papendick, M.D., and **DISMISSES** Plaintiff's claims against those Defendants **WITH PREJUDICE**.

The Court **DENIES** Defendants' motion as to Plaintiff's claims against Defendant Juliana Martino regarding her treatment of Plaintiff's hernia condition in April of 2018 only, and otherwise **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's remaining Eighth Amendment claims against Martino **WITH PREJUDICE**.

This Opinion and Order does not resolve all pending claims and does not close this case.

IT IS SO ORDERED.


Dated: January 26, 2021                     s/Paul D. Borman
                                            Paul D. Borman
                                            United States District Judge

41