UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMERON TIETZ #827870, Plaintiff,

                                      No. 2:20-cv-10814

V

                                       HON.  PAUL D. BORMAN

CORIZON HEALTH, INC, et al,
Defendants.

_____/

Keith L. Altman (P81702)
The Law Office of Keith Altman
*Attorney for Plaintiff*
33228 West 12 Mile Road, Ste 375
Farmington Hills, MI 48334
(516) 456-5885
kaltman@lawampmmt.com

Ronald W. Chapman Sr. (P37603)
Devlin K. Sarber (P64532)
Chapman Law Group
Attorney for Defendants Corizon Health,
Inc., and Kim Farris P.A. 1441 W. Long
Lake Road, Ste 310 Troy, MI 4809
(248)644-6326

Michael R. Dean (P71333)

Zachary A. Zurek (P80116)
Assistant Attorney General
Attorney for MDOC Defendants
MDOC Division
P.O. Box 30217 Lansing,
MI  4
(517) 335-3055

_____

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MDOC's MOTION TO DISMISS

NOW COMES Plaintiff CAMERON TIETZ by and through counsel,

EXCOLO LAW PLLC, and files this response in opposition of Defendant

MDOC's Motion to Dismiss. For the reasons stated in the attached brief, Plaintiff

respectfully requests this Court deny Defendants' motion.

                              Respectfully submitted,
                              /s/ Keith Altman

                              Keith Altman
                              The Law Office of Keith Altman
                              33228 West 12 Mile Road
                              Suite 375
                              Farmington Hills, MI 48334
                              516-456-5885
                              kaltman@lawampmmt.com

Dated: March 5, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF ISSUE PRESENTED ..................................................v

CONTROLLING/APPROPRIATE AUTHORITY................................ vi

STATEMENT OF FACTS ......................................................................1

STANDARD OF REVIEW .....................................................................7

ARGUMENT ..........................................................................................8

   I.   THIS MATTER HAS BEEN PLED PROPERLY IN ACCORDANCE WITH FED. R. C. P. JOINDER RULES ................................................8

   II.    PLAINTIFF HAS PROPERLY PLEAD THE NECESSARY FACTUAL ALLEGATIONS AGAINST MDOC DEFENDANTS .......................................9

      A.   Plaintiff Has Properly Stated a Claim .......................................9

      B.   Plaintiff has Sufficiently Stated a Claim of Eighth Amendment Deliberate Indifference Against Defendant's Adray and Duncan ...................11

      C.   Plaintiff has Properly Stated a Claim Against Non-Healthcare MDOC Defendants........................................................................................13

   III.    PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF CONSPIRACY ....................................................................................14

CONCLUSION AND RELIEF REQUESTED ......................................21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................ vi, 7

*Blackmore v. Kalamazoo County*, 390 F. 3d 890 (6th Cir. 2004) ...........................11

*Cook v. Corizon Health, Inc.* 2019 WL 3043906 ...................................................11

*Easterling v. Crawford*, 2014 U.S. Dist. LEXIS 13743 (S.D. Ohio) .....................17

*Estelle v. Gamble*, 429 U.S. 102 (1976) .................................................................11

*Farmer v. Brennan*, 511 U.S. 825 (1994)................................................................11

*Gunasekera v. Irwin*, 551 F.3d 461, (6th Cir. 2009) .......................................... vi, 7

*Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012)................................................14

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) .......................................................14

*Horton v. City of Rockford*, 2019 WL 3573566 (N.D. Ill. Aug. 6, 2019) ..............10

*Kennedy v. Bonevelle*, 413 Fed. Appx. 836 (6th Cir. 2011)....................................7

*Keys v. Humana, Inc*., 684 F.3d 605 (6th Cir. 2012)................................................7

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007).....7

*Nali v. Mich. Dep't of Corr.*, 2007 U.S. Dist. LEXIS 98919, 2007 WL 4465247
  (E.D. Mich. Dec. 18, 2007) ...................................................................................9

*Pelichet v. Gordon*, 2019 WL 4619742 (E.D. Mich. Sept. 20, 2019) ....................10

*Phillips v. Roane Cnty.*, 534 F.3d 531 (6th Cir. 2008) ...........................................10

*Preyor v. City of Ferndale*, 248 F. Appx. 636 (6th Cir. 2007)...............................12

*Richko v. Wayne Cnty.*, 819 F.3d 907 (6th Cir. 2016)............................................10

*Salehpour v. University of Tenn*., 159 F.3d 199 (6th Cir. 1998) .............................14

*Terrance v, Northville Reg'l Psychiatric Hosp.,* 286 F.3d at 843 (6th Cir. 2002) ..13

*Vinson v. Mich. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175202, (E.D. MI October
  15, 2015)........................................................................................... 17, 21

*Vinson v. Mich. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 6930, (E.D. MI January
  21, 2016)........................................................................................... 17, 21

*Wilson v. Seiter*, 510 U.S. 294 (1991) ....................................................................11

**Rules**

Fed. R. Civ. P. 20(a)(2).............................................................................................8

Fed. R. Civ. P. 8(a)(2)........................................................................................ vi, 7

Fed. R. Civ. P.18(a)...................................................................................................8

## <u>STATEMENT OF ISSUE PRESENTED</u>

WHETHER PLAINTIFF'S AMENDED COMPLAINT SHOULD BE
DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(b)(6)?

PLAINTIFF ANSWER: NO. DEFENDANT ANSWER: YES.

## <u>CONTROLLING/APPROPRIATE AUTHORITY</u>

The sufficiency of Plaintiff's pleadings is governed by Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

Authority for making a claim for deliberate indifference can be found in *Richko v. Wayne Cnty.*, 819 F.3d 907, 916 (6th Cir. 2016)

Authority concerning allegations of intracompany conspiracy can be found in *Vinson v. Mich. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175202, *29-35. (October 15, 2015).

## STATEMENT OF FACTS

Plaintiff, Cameron Tietz, filed this lawsuit for, among other things, Defendants' deliberate indifference to his serious medical needs. Plaintiff alleges that while incarcerated in the custody of the Michigan Department of Corrections (MDOC), Defendants were deliberately indifferent to their serious medical needs in violation of the Eighth Amendment by delaying and refusing treatment.

Plaintiff alleges that from approximately 2016-2018, he was extremely sick with cellulitis and three hernias. (ECF #12, ¶ 12) Throughout this time, Mr. Tietz experienced excessive pain, difficulties urinating, ongoing constipation, and eventually physically collapsed. (*Id*. at ¶ 74). Although Plaintiff was given stool softeners and over-the-counter medication, the Defendants delayed follow-up x-rays and other testing necessary to provide Plaintiff with a diagnosis. (*Id*. at ¶56). Mr. Tietz further alleges that Defendants ignored his symptoms and refused to send him out of the correctional facility to see a specialist to get an accurate diagnosis. (*Id*. at ¶ 67). Mr. Tietz is still experiencing severe, constant stomach pain and his nutrition levels are not normal, suggesting the presence of a stomach infection. (*Id*. at ¶ 82). Defendants acted with deliberate indifference to Plaintiff's complaints and signs of serious medical needs and denied Plaintiff reasonable medical care. (*Id*. at ¶ 83-84).

In approximately 2013 or 2014, Plaintiff developed symptoms including high fever, body aches, severe redness and swelling of the leg, and burning pain in his

leg. (*Id*. at ¶ 45). Although healthcare believed that Plaintiff had simply been suffering from the flu, his symptoms persisted, and healthcare ultimately determined Plaintiff had cellulitis. (*Id.*) After treating Plaintiff for cellulitis, healthcare staff informed Plaintiff that should he ever experience such symptoms again, he should inform healthcare staff it is cellulitis, and similar treatment would be required. (*Id.*).

In March 2018, Plaintiff once again developed a high fever, body aches and pain, severe swelling and redness in his leg, and burning in his leg. Plaintiff immediately recognized these symptoms as those of cellulitis. (*Id*. at ¶ 64). Here, Plaintiff informed healthcare officials of his history and the requisite treatment. (*Id.*). Despite informing healthcare about the 2013/2014 diagnosis, healthcare officials insisted that Plaintiff had the flu and refused to provide Plaintiff proper treatment. (*Id.*). The following day Plaintiff returned to healthcare with significantly worsened symptoms. (*Id.* at ¶ 65). Plaintiff was ignored and sent back to his cell. (*Id.*).

Despite the initial denial of proper treatment, Plaintiff continued to seek treatment for cellulitis. On or around March 18, 2018, Plaintiff was transferred to an outside hospital. (*Id.* at ¶ 66). There, he suffered for three days with redness and swelling in his entire leg and a 100℉ fever. (*Id.*). While in the hospital, physicians diagnosed Plaintiff with cellulitis. (*Id.* at ¶ 67). The hospital physician explained that should Plaintiff suffer from these symptoms again, he needed to be admitted more

quickly. (*Id.*). Moreover, the physician ordered that Plaintiff see a specialist to determine why the issue was recurring. (*Id*.).

Upon returning to MRF, Plaintiff was not prescribed the antibiotics ordered by the hospital. As a result, Plaintiff's symptoms began to worsen. In fact, he began to experience nerve impingement and memory fog. (*Id.* at ¶ 68). Despite knowing that the physician ordered that Plaintiff see a specialist, prison healthcare staff refused to schedule Plaintiff with a specialist. (*Id.* at ¶ 69).

Once more, in August of 2018, Plaintiff began to experience symptoms of cellulitis. Plaintiff informed prison healthcare staff of his history. Once again, Healthcare staff failed to treat Plaintiff for cellulitis. Instead, they provided him with Tylenol and ordered Plaintiff back to his cell. (*Id.* at ¶ 72). In response to healthcare's refusal to treat Plaintiff, Plaintiff continued to seek treatment. He continued to be denied. (*Id.*). Ultimately, Plaintiff collapsed and had to be carried to healthcare. There, he was once again transferred to an outside hospital. (*Id.* at ¶ 74).

Plaintiff was forced to remain in the hospital for two weeks. He had to receive intravenous antibiotics as his condition had continued to deteriorate due to healthcare's refusal to provide the proper treatment. While at the hospital, the physician expressed frustration with the delay in Plaintiff's treatment and with the fact that Plaintiff had yet to see a specialist. (*Id.* at ¶ 75). After two weeks in the hospital, Plaintiff was sent to the MDOC Duane Waters hospital. There, a prison

healthcare physician discontinued Plaintiff's intravenous antibiotics. This was done despite the fact that the outside physician had ordered the antibiotics be continued. After a brief stay at Duane Waters, Plaintiff was sent back to MRF with only oral antibiotics. (*Id.*).

Once again, MRF healthcare staff refused to schedule Plaintiff to see a specialist. In fact, during a follow-up visit, Plaintiff was expressly told that he would not be scheduled to see a specialist. (*Id.* at ¶ 77). Unsurprisingly, in January of 2019, Plaintiff became symptomatic once more. Treatment was denied for several days. After suffering for several days without treatment, Plaintiff had to be admitted to an outside hospital. (*Id.*). There, the physician was shocked that Plaintiff had yet to see a specialist. (*Id.* at ¶¶ 79-80). To receive an accurate diagnosis, Plaintiff would need to see a specialist when he was not suffering from an active bout of cellulitis. (*Id.*). Again, the hospital's physician ordered that a specialist examine Plaintiff. Admittedly, the specialist could not diagnose Plaintiff while the infection was active. Nevertheless, he or she noted that it was most likely cellulitis or a more severe form of streptococcal. (*Id.*).

In response to Plaintiff's frequent cellulitis outbreaks, the hospital physician ordered a long-term antibiotic in an attempt to stop the infection from recurring. (*Id.* at ¶ 81). Moreover, the hospital physician ordered that Plaintiff be placed on probiotics, warning that if Plaintiff did not take the probiotic then he would inevitably suffer a

stomach infection. (*Id.*). Once more, MRF healthcare officials denied Plaintiff access to the requisite care. That is, they denied Plaintiff probiotics, resulting in Plaintiff's constant stomach pain. (*Id.* at ¶ 82). Additionally, Plaintiff still has not been permitted to see a specialist. (*Id.* at ¶ 83).

In addition to suffering from recurring bouts of cellulitis, Plaintiff has also been denied care for his hernias. Sometime in 2016, Plaintiff began to experience a ripping feeling in his abdomen and was bedridden in pain for several weeks. (*Id.* at ¶ 51). Soon thereafter, he developed a protruding mass in his abdomen. It grew to the size of a baseball. (*Id.*). When Plaintiff sought care, he was told that his hernia was an overdeveloped muscle and that there was not a protrusion. Plaintiff persisted in seeking medical care. He was systematically denied. (*Id.* at ¶ 52).

Next, in April of 2018, Plaintiff developed a second hernia that began to protrude near his navel. (*Id.* at ¶ 53). Plaintiff again sought care from MRF healthcare staff. There, he was told that they do not treat hernias and was offered no care. Plaintiff was forced to live with the pain. (*Id.*). In December of 2018, Plaintiff's second hernia was further exacerbated. This caused him severe groin pain and difficulty using the restroom. (*Id.* at ¶ 54). Eventually, Plaintiff's two hernias grew so large they had nearly grown into one another. Plaintiff was again bedridden for several weeks from severe pain. (*Id.* at ¶ 55).

MRF eventually began to treat Plaintiff's hernia. They conducted an X-ray examination. However, Plaintiff never received a follow-up regarding the results of the X-ray. Again, Plaintiff continued to seek assistance from MRF healthcare personnel regarding his hernia. (*Id.* at ¶ 56). In fact, when Plaintiff sought care from MRF officials, he was told, "I don't know why you keep coming over. We are not going to help with a hernia." At several points, MRF officials even suggested that Plaintiff did not have a hernia and he was simply constipated. (*Id.* at ¶ 57).

As of now, Plaintiff has developed a third hernia in his groin. This causes Plaintiff severe groin and testicular pain, trouble urinating, and ongoing constipation. (*Id.* at ¶ 58). Yet, rather than treat Plaintiff's underlying hernia's, MRF healthcare staff prescribed *eight* stool softener pills per day, causing Plaintiff severe diarrhea and even more pain. (*Id.* at ¶ 59). Plaintiff continued to seek care regarding his hernias and was continuously denied. (*Id.*) Eventually, healthcare staff ordered a second X-ray. Once again, Plaintiff never received the results of this X-ray. He continued to be denied treatment. Plaintiff continues to suffer from these serious medical conditions. (*Id.* at ¶ 60).

## <u>STANDARD OF REVIEW</u>

All that is required under the Federal Rules of Civil Procedure is for a Plaintiff to plead "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) "Specific facts are not necessary." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009); *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012) (same); *see also*., *Kennedy v. Bonevelle*, 413 Fed. Appx. 836, 839 (6th Cir. 2011) ("Specific facts are not required by a prisoner at the pleading stage."). In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiff and assumes that all facts in Plaintiff's complaint are true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

For the reasons stated herein, Plaintiff respectfully requests this Court deny the MDOC Defendants' motion to dismiss.

## ARGUMENT

### I.   THIS MATTER HAS BEEN PLED PROPERLY IN ACCORDANCE WITH FED. R. C. P. JOINDER RULES

Defendants assert that Plaintiff's Complaint violates the federal rules governing joinder. (ECF #32, PageID.543). Fed. R. Civ. P. 20(a)(2) governs permissive joinder of defendants and provides:

> (2) Defendants. Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P.18(a) governs joinder of claims and provides: "A party asserting a claim…may join, as independent or alternative claims, as many claims as it has against an opposing party."

In this case, the entirety of Plaintiff's constitutional violation claims arise out of Defendants' denial of medical care. Plaintiff's retaliation claims against defendants not directly involved in the medical claims arise as a result of Plaintiff filing grievances after being denied medical care. All of Plaintiff's claims arise out of the same series of occurrences, namely the denial of medical care and Plaintiff filing grievances as a result.

When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including," 'the time period

during which the alleged acts occurred; whether the acts [] . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting Nali v. Mich. Dep't of Corr., 2007 U.S. Dist. LEXIS 98919, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

In the present matter, all of the acts alleged occurred within the time period of 2016 to 2020 while Plaintiff was incarcerated at MDOC facilities. Further, the acts alleged are related in that the retaliation claim resulted from Plaintiff's grievances having to do with his Eighth Amendment claim of Deliberate Indifference to Serious Medical Need. Finally, while the defendants were at two different correctional facilities, they were all employees of MDOC engaging in retaliation as a result of Plaintiff's treatment in one facility.

Therefore, this Court should not sever the Eighth Amendment claims and Defendants in this case as Plaintiff has properly joined all defendants and claims.

## II. PLAINTIFF HAS PROPERLY PLEAD THE NECESSARY FACTUAL ALLEGATIONS AGAINST MDOC DEFENDANTS

### A. Plaintiff Has Properly Stated a Claim

Defendants maintain that Plaintiff's Amended Complaint has no short and plain statement of the claim as to the MDOC Defendants. Defendants' contention over Plaintiff's pleading is a matter of style over substance. Referring to Defendants collectively in the Amended Complaint does not violate Rule 8 of the Federal Rules

of Civil Procedure regarding pleadings so long as the complaint "provides sufficient detail to put the defendants on notice of the claims." *Horton v. City of Rockford*, 2019 WL 3573566, at *3 (N.D. Ill. August 6, 2019) ("[T]he Amended Complaint contains the what, where, when, and how, but not the precise 'who' for every alleged act of misconduct. That is sufficient at this stage."). For section 1983 claims specifically, courts permit plaintiffs to set forth allegations as to defendants generally without segregating each responsibility at the pleadings stage. *See, e.g.*, *Pelichet v. Gordon*, 2019 WL 4619742, at *18 (E.D. Mich. September 20, 2019) ("Although Plaintiffs consistently lump together Defendants . . . without specifying how each, or any, participated in the alleged constitutional violations, the actions of their Committee are specifically addressed by Plaintiffs throughout the entirety of the [complaint]."). In the Sixth Circuit, plaintiffs may "present general allegations to prove that each individual defendant has the requisite knowledge for deliberate indifference." *See Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008) "General allegations of liability, so long as they are not broad and conclusory accusations, can provide 'sufficient evidence from which a trier of fact'" can find deliberate indifference. *Richko v. Wayne Cnty.*, 819 F.3d 907, 916 (6th Cir. 2016). This is appropriate at this early stage. Plaintiff's complaint provides numerous plausible factual allegations of the MDOC Defendants' deliberate indifference—not

merely legal conclusions disguised as factual allegations. Thus, Plaintiff's Amended Complaint states proper claims against Defendants.

### B. Plaintiff has Sufficiently Stated a Claim of Eighth Amendment Deliberate Indifference Against Defendant's Adray and Duncan

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Cook v. Corizon Health, Inc.* 2019 WL 3043906 (quoting *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976)). When bringing an Eighth Amendment claim for failure to provide adequate medical care, a Plaintiff is required to demonstrate that both the objective and subjective elements of the claim have been met. The objective element considers whether a medical need is "sufficiently serious." *Wilson v. Seiter*, 510 U.S. 294, 298 (1991); *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004). Further, the subjective element asks whether "a sufficiently culpable state of mind existed behind the deprivation of the medical care." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

**Defendant Adray**

As Plaintiff alleged in its amended complaint, Defendant Adray knew Plaintiff had a hernia as well as a golfball-sized mass sticking out of his body and refused to follow up or prescribe any medication. (ECF #12 PageID.227, ¶53). Mr. Tietz noticed a ripping feeling in his abdomen and was bedridden for weeks from the pain. (*Id.* ¶¶51, 55). In instances where there was a "clear manifestation of an internal

physical disorder, the objective component [of this test] is satisfied." *Preyor v. City of Ferndale*, 248 F. Appx. 636, 644 (6th Cir. 2007). The mass protruding from his abdomen grew to the size of a baseball showing an obvious internal disorder. Even with a substantial mass sticking out of his body, Defendants Adray refused treatment. (*Id.* ¶¶ 51-53).

Defendant Adray denied medical treatment to Plaintiff despite his continued requests for medical care with knowledge of his serious medical needs. (ECF #12 PageID.228, ¶¶60-63). Finally, Plaintiff specifically pleaded that Defendant Adray repeatedly failed to follow up with Plaintiff about the serious medical problems he was experiencing. (ECF #12 PageID.231, ¶73).

**Defendant Duncan**

Similarly, as Plaintiff pleaded in its original complaint, Defendant Duncan denied medical care despite knowledge of Plaintiff's state of obvious pain and discomfort. (ECF #12 PageID.228, ¶62). Plaintiff properly pleaded the requisite facts to demonstrate that Farris appreciated Mr. Tietz's serious medical condition and denied him care. Specifically, Plaintiff alleged that while Plaintiff continually attempted to seek medical care and requested X-ray results, Duncan, with knowledge of Tietz's three hernias, did not follow up with Plaintiff. (ECF #12 PageID.231, ¶73).

Plaintiff has pleaded the requisite facts to demonstrate that each Defendant appreciated Plaintiff's serious medical condition and still denied him care. As

demonstrated herein, Plaintiff properly outlined specific and individual misconduct by both Adray and Duncan. Admittedly, Plaintiff did segregate their statement of facts from their claims. However, individual sections of a complaint are not meant to be read in a vacuum, and Plaintiff's factual allegations state a claim against each individual Defendant. Eighth Amendment violations may be established by "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment," or where care rendered is "so cursory as to amount to no treatment at all." *Terrance v, Northville Reg'l Psychiatric Hosp.,* 286 F.3d at 843 (6th Cir. 2002). Taken in the aggregate, a trier of fact could find that a reasonable nurse assistant in Adray or Duncan's position would have concluded that a substantial risk of serious harm to Mr. Tietz existed and denied adequate care.

Accordingly, it is respectfully requested that this Court deny Defendant's motion to dismiss Plaintiff's Eighth Amendment claim against Defendants Adray and Duncan.

### C. Plaintiff has Properly Stated a Claim Against Non-Healthcare MDOC Defendants

Plaintiff's claims against the non-healthcare MDOC Defendants do not stem from mere failure to adequately address grievances, failure to intervene, or nonresponsiveness as Defendant suggests. (ECF #32 PageID.549). Plaintiff agrees that liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Salehpour v. University of Tenn.*, 159

F.3d 199, 206 (6th Cir. 1998), cert denied, 119 S. Ct. 1763 (1999). Plaintiff's allegations against non-healthcare MDOC Defendants are pleaded in relation to the retaliatory and acquiescing nature of their conduct and not a mere failure to act.

As Plaintiff stated in its amended complaint,

> "Despite Defendant Taylor, Defendant Warren and Defendant Russell's explicit knowledge that Plaintiff had been prescribed medication by a doctor and was being refused the medication by healthcare, Defendants rejected Plaintiff's grievances and acted out of retaliation for Plaintiff's protected conduct of filing grievances and with deliberate indifference to his serious medical need by permitting healthcare to deny medication prescribed by a doctor for a diagnosed medical condition."

(ECF #12 PageID.238, ¶100). Thus, Defendants Warren and Russell knowingly consented to the unconstitutional conduct of healthcare officials. Accordingly, Plaintiff articulated specifically how both Defendant Warren and Defendant had knowledge of the unconstitutional conduct by healthcare officials and further acquiesced retaliatory conduct.

## III.   PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF CONSPIRACY

Plaintiff sufficiently asserted a civil conspiracy claim. A civil conspiracy under §1983 is an agreement between two or more persons to injure another by unlawful action. *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The Plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general

conspiratorial objective to deprive the plaintiff of a federal right, and that an overt act committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Plaintiff's allegations of conspiracy are adequately stated in its "statement of facts" section of its Amended Complaint, specifically in Paragraphs 85-150. For example, Plaintiff stated that

> "On or about September 21, 2019, Plaintiff was woken up by Defendant Weems entering Plaintiff's room and tearing it apart. Defendant Weems tore the covers off of two religious books, ripped Plaintiff's playing cards, and confiscated various other belongings."

> "During this incident, Defendant Weems indicated that he had been sent by his Sergeant because the administration was upset that Plaintiff had been writing grievances. Defendant Weems continued to make statements such as "Apparently you have been bothering the administration writing grievances, so this had to happen." and "For future reference, maybe you shouldn't write anymore grievances." This demonstrates the widespread knowledge around the facilities that Plaintiff was engaged in constitutional protected conduct and was then asked to stop because it was bothersome to the administration. This is common place in the MDOC and negatively impacts prisoners ability to effectively utilize the grievance system in the face of threats in response to their constitutionally protected conduct."

(ECF #12PageID243,¶¶118-19). Further, after this incident occurred, Plaintiff alleged:

"After recognizing Plaintiff's protected conduct, Defendant Weems proceeded to write Plaintiff a class one misconduct ticket, falsely alleging that he found six tattoo needles in Plaintiff's footlocker. The untruthfulness of this claim is obvious from the fact that Defendant Weems never photographed or otherwise preserved the tattoo needles he allegedly found, Defendant Weems indicated that Plaintiff's footlocker was labeled with his name when in fact it had not yet been labeled after his arrival, and Defendant Weems indicated that the footlocker was within Plaintiff's area of control when in fact it was outside of it."

"Plaintiff's misconduct ticket was then reviewed by Defendant Descroche. Defendant Descroche refused to consider the obvious discrepancies in the evidence and instructed Plaintiff to plead guilty to receive a lesser punishment, which Plaintiff refused. Defendant Descroche failed to intervene to prevent Defendant Weems' retaliatory action. Defendant knew of Plaintiff's protected conduct and furthered the ongoing retaliation against Plaintiff throughout the facility by failing to properly investigate Plaintiff's claims."

(*Id.* ¶¶120-21). These specific instances demonstrate an explicit agreement amongst MDOC Defendants to retaliate against Plaintiff and deny him appropriate medical care because of his grievance.

As to the intra-corporate conspiracy doctrine, The MDOC Defendants are not entitled to the benefits and are liable for conspiracy. There are two different groups of individual defendants: those employed by the MDOC and those employed by Corizon. While the intra-corporate conspiracy doctrine may apply for a conspiracy entirely within one group or the other, there is no sound basis to conclude that the doctrine should protect actors who are state employees from

conspiring with actors who are private employees, even if the groups are both state actors for purposes of § 1983. Thus the Court should deny Defendants' motion to dismiss with respect to the conspiracy claim.

Defendant cited cases do not refute Plaintiff's arguments. Especially troubling is the omission from MDOC's citation to *Easterling v. Crawford*, 2014 U.S. Dist. LEXIS 13743 (S.D. Ohio), where the court wrote in the very paragraph cited by MDOC, "The Court notes however, that an exception exists when the challenged activity takes place outside the scope of employment." (citing to *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837 (6th Cir. 1994)). Easterling v. Crawford, No. 3:13-cv-430, 2014 U.S. Dist. LEXIS 13743, at *37 (S.D. Ohio February 3, 2014). This is the exact case here. Employees of the MDOC and Corizon's actions fall outside the scope of their employment.

Surprisingly, the MDOC did not cite *Vinson v. Mich. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175202, *29-35. (E.D. MI October 15, 2015). Affirmed in relevant part by *Vinson v. Mich. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 6930, *6 (E.D. MI January 21, 2016). There the *Vinson* Court performed a comprehensive review of the exact same question as before this Court. *Vinson* postdates the authority identified by the MDOC. Plaintiff includes the relevant language from *Vinson* to assist the Court:

> The MDOC and the Corizon defendants, along with Paratchek, also argue that this conspiracy claim cannot be brought due to

the "intracorporate conspiracy" theory. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-510 (6th Cir. 1991). *Hull* explains that the Sixth Circuit has "adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees," citing *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984). The "intracorporate conspiracy" doctrine has been adopted in both antitrust litigation and civil rights cases. *Hull, supra*; *Doherty, supra*. In *Hull*, the plaintiff was "alleging a conspiracy between a school district superintendent, the executive director of the district, and a school administrator, all of whom are employees or agents of the Board. According to defendants, since all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." Therefore, the conspiracy civil rights claim in *Hull* was dismissed and no such claim can exist here, as the medical providers are either employees of Corizon or of the MDOC. The Corizon defendants do not flesh out this issue to any great extent, but the MDOC defendants, who lost their previous motion to dismiss, insist that because all of the defendants, including its "agents" employed by Corizon, are "members of the same collective entity, i.e., MDOC healthcare, there are not two separate 'people' to form a conspiracy." (Dkt. 69, Pg ID 1234).

In response, plaintiff asserts that, in this case, the MDOC defendants are employed by the State of Michigan and conspired with employees of Corizon, a separate legal entity. As a result, they are not protected from immunity by the intracorporate conspiracy doctrine. According to plaintiff, defendants' reliance on the term "agent" is also misplaced and inapplicable with respect to the doctrine. An "Agent" is described as a "person authorized by another (principal) to act for or in place of him; One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons" Black's Law Dictionary, 6th ed., p. 63. In essence, the agent has the power to bind the principal contractually; acting in the stead of the principal to execute on behalf of said principal. In the instant

matter, according to plaintiff, it is MDOC who can be characterized as an agent for the State of Michigan. MDOC, on behalf of the State of Michigan, contracted with Corizon to provide medical services for its inmate population. Corizon is a vendor contracted to provide said services. Plaintiff points out that Corizon and its employees have no agency power, they cannot contract on behalf of the State, may not make legally binding decisions on behalf of the State, and the State cannot be held liable for the actions of Corizon and its employees.

In essence, plaintiff asserts that Corizon's relationship with the State of Michigan is the antithesis of an agency relationship. *See Doherty v American Motors, Corp.*, 728 F.2d 334 (6th Cir. 1984). In *Doherty*, the plaintiff argued that his conspiracy claim should be upheld because the defendants and his attorney conspired against him during a criminal action. The Sixth Circuit ruled that the claim required evidence of a conspiracy between AMC, its officers, agents, and attorneys on one hand, and the plaintiff's attorney. *Doherty*, 728 F.2d at 340. It found none. The plaintiff was an employee of AMC and AMC paid for his attorney during the criminal matter. Thus, even though AMC paid for the plaintiff's legal representation, that attorney was not an agent of AMC. Similarly, plaintiff maintains that Corizon and its employees were contracted to provide medical services to the inmate population; [*33] they are vendors, nothing more. Corizon and its employees have no power to legally bind the State of Michigan or MDOC. Thus, according to plaintiff, the intracorporate conspiracy doctrine is inapplicable because the alleged conspiracy involves employees of MDOC and Corizon.

In the view of the undersigned, the intracorporate conspiracy doctrine does not bar a conspiracy claim where employees of MDOC *and* Corizon are alleged to have participated. Defendants cite no authority for this proposition and the court was unable to find any such clear support. Rather, defendants rely on the fact that Corizon and its employees are "acting under color of state law" under § 1983 and, therefore, they are agents of MDOC for purposes of the intracorporate conspiracy doctrine. This is far too big of a leap and this conclusion is not

supported by any authority. Indeed, the intracorporate conspiracy doctrine "provides that members of the *same legal entity* cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013)(emphasis added). Defendants do not explain how MDOC and Corizon are the "same legal entity." Indeed, it is clear that they are not. Nor does there appear to be any agency relationship such that this doctrine could be invoked.

Notably, there is a split of authority in the district courts within the Sixth Circuit as to whether the intracorporate conspiracy doctrine even applies to § 1983 claims. As explained in *Engle v. City of Cuyahoga Falls*, 2015 U.S. Dist. LEXIS 80654, 2015 WL 3852143, *9 (N.D. Ohio 2015), it is unclear and unsettled within the Sixth Circuit as to whether the intracorporate conspiracy doctrine applies to conspiracy claims brought under § 1983. The Court further observed that it is evident from a survey of recent cases that courts within the Sixth Circuit continue to spar over whether two individuals from the same entity can form a conspiracy under § 1983. *Id.*, comparing *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 2015 WL 1459611, at *7 (W.D. Mich. 2015) (applying intracorporate doctrine to bar conspiracy claim under § 1983); with *Tinney v. Richland Cnty.*, 2015 U.S. Dist. LEXIS 16266, 2015 WL 542415, at *12 (N.D. Ohio 2015) (refusing to extend intracorporate doctrine to § 1983 conspiracy claim brought against individual employees of the same municipality). Very recently, the Sixth Circuit observed that this question is unsettled. *Diluzio v. Village of Yorkville, Ohio*, 796 F.3d 604, 2015 WL 4646121, *8 (6th Cir. 2015) ("[E]ven if the intracorporate conspiracy doctrine applies to municipal government officials in a § 1983 action (and we do not hold that it necessarily does), the doctrine does not apply in this case because the defendants are accused of conspiring to wrongfully divest [the plaintiff] of his property, which would fall outside the scope of their employment."). Given the unsettled nature of this doctrine as applied to § 1983 conspiracy claims, the undersigned is not inclined to find that such claims are barred for this additional reason.

*Vinson v. Mich. Dep't of Corr.*, 2015 U.S. Dist. LEXIS 175202, *29-35. (October 15, 2015). Affirmed in relevant part.

First, Defendants Paratchek and the Individual State Defendants all object to the magistrate judge's determination that Plaintiff's First Amended Complaint has sufficiently alleged conspiracy claims against them. They fault the magistrate judge's analysis in several respects. Having reviewed Plaintiff's First Amended Complaint, the R&R's extensive discussion of these challenges, and the objections to the R&R, the Court agrees that Plaintiff has sufficiently alleged the conspiracy claims that are recommended to proceed in this action. Defendants' various challenges will be more appropriately addressed at the summary judgment stage of this litigation.

*Vinson v. Mich. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 6930, *6 (E.D. MI January 21, 2016)

It is clear that comparing the well-reasoned analysis from *Vinson* that the intra-corporate conspiracy doctrine does not apply in situations, such as here, where there are actors employed by the state or its agencies and actors from a private corporation. Thus Defendants' motion should be denied with respect to the conspiracy claim.

## **CONCLUSION AND RELIEF REQUESTED**

For the reasons stated herein, Plaintiff respectfully requests this Court deny the MDOC Defendants' motion to dismiss.

Dated March 5, 2021          Respectfully submitted,
                                     /s/ Keith Altman

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road
Suite 375
Farmington Hills, MI 48334
516-456-5885
kaltman@lawampmmt.com

## <u>CERTIFICATE OF SERVICE</u>

Undersigned hereby states that on March 5, 2021, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all parties through their counsel of record through the Court's CM/ECF electronic filing system.

*<u>/s/ Keith Altman</u>*