UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMERON TIETZ #827870,

           Plaintiff,                    Case No. 20-10814

v.                                 Paul D. Borman
                                 United States District Judge

CORIZON HEALTH, INC., et al.,

           Defendants.

_____/

## OPINION AND ORDER GRANTING MDOC DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 32)

In this action, Plaintiff Cameron Tietz, a prisoner currently housed in the Michigan Department of Corrections ("MDOC") Chippewa Correctional Facility ("URF") in Kincheloe, Michigan, initially asserted claims against 34 named Defendants, made up of prison medical providers (the "Corizon Defendants") and MDOC employees (the "MDOC Defendants"), pursuant to 42 U.S.C. § 1983, for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments. The Court previously granted in part and denied in part the Corizon Defendants' motion to dismiss.

Now before the Court is the MDOC Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 32).

1

The Court has determined that oral argument is not necessary for proper resolution of this motion and will resolve the matter on the parties' written submissions. E.D. Mich. L. R. 7.1(f)(2). For the reasons that follow, the Court GRANTS the MDOC Defendants' Partial Motion to Dismiss.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff's Amended Complaint

On March 27, 2020, Plaintiff Cameron Tietz, through his counsel, filed a Complaint initiating this matter. (ECF No. 1, Complaint.) Plaintiff filed his Amended Complaint on June 29, 2020, asserting claims against 34 defendants – including 30 current or former Michigan Department of Corrections ("MDOC") employees, Corizon Health, Inc., and three Corizon employees – under 42 U.S.C. § 1983 for violations of Plaintiff's First and Eighth Amendment rights, retaliation, and conspiracy. (ECF No. 12, First Amended Complaint ("FAC").)

On January 26, 2021, this Court entered an Opinion and Order Granting in Part and Denying in Part Defendants Corizon Health, Inc., Kim Farris, P.A., Keith Papendick, M.D., and Juliana Martino, P.A.'s Motion to Dismiss. (ECF No. 29, Opinion and Order.) Specifically, the Court denied the Corizon Defendants' motion to dismiss solely as to Plaintiff's Eighth Amendment claim against Defendant Juliana Martino in Count I of the Amended Complaint, limited to Martino's

2

treatment of Plaintiff's hernia condition in April of 2018 only, but otherwise dismissed Plaintiff's remaining claims against Defendant Martino, and Plaintiff's claims against Defendants Corizon Health, Inc., Kim Farris, P.A., and Keith Papendick, M.D. in their entirety, with prejudice.

The 30 MDOC Defendants are current or former employees who worked at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan, the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan, and the MDOC Central Office in Lansing, Michigan. Two of the MDOC Defendants, Lisa Adray and Nelson Duncan, are nurses, and the remainder of the MDOC Defendants are non-healthcare employees.

Because this is a motion to dismiss, the facts recited below are stated as they are alleged in Plaintiff's Amended Complaint.

### 1.    Eighth Amendment Deliberate Indifference Claims Against MDOC Defendants Adray and Duncan (Counts I and II)

Counts I and II of Plaintiff's Amended Complaint assert Eighth Amendment Deliberate Indifference claims against "Defendants Corizon and Healthcare Officials." (FAC, Counts I & II, ¶¶ 151-73, PageID.251-255.) Plaintiff defines "Healthcare Officials" as including MDOC Defendants Adray and Duncan, and Corizon Defendants Keith Papendick, M.D., Kim Farris, P.A., and Juliana Martino,

P.A. (FAC ¶ 17, PageID.219.) Thus, Defendants Adray and Duncan are the only MDOC Defendants listed in Counts I and II of Plaintiff's Amended Complaint.

Plaintiff complains that the Corizon Defendants and MDOC Defendant nurses Adray and Duncan were deliberately indifferent to treating Plaintiff's hernias (Count I) and streptococcal infections (Count II). The Court addressed these claims in the context of the Corizon Defendants' motion to dismiss, and the only claim it permitted to proceed was against Corizon Defendant Martino, and only with regard to Plaintiff's claim regarding Martino's treatment of Plaintiff's hernia condition in April of 2018. (ECF No. 29, Opinion and Order at pp. 35, 41, PageID.466, 472.) All other claims against the Corizon Defendants have been dismissed with prejudice.

Plaintiff's allegations in support of his Eighth Amendment claims are as follows:

Plaintiff alleges that in 2013 or 2014, he developed symptoms including high fever, body aches, severe redness and swelling and burning pain in his leg, and while prison healthcare officials believed Plaintiff had the flu, after he was transferred to an external hospital, he was diagnosed with cellulitis. (FAC ¶¶ 45, 64, PageID.225, 229.) Plaintiff's infection was "successfully treated … with IV infused antibiotics," and the doctor "instructed Plaintiff that, if the same symptoms should ever occur

again, he should inform the prison healthcare services that the infection is cellulitis and that similar treatment is required." (*Id.* ¶ 45, PageID.225.)

Plaintiff asserts that he first developed a hernia some time in 2016 when he was incarcerated at Macomb Correctional Facility ("MRF"), when he "noticed a ripping feeling in his abdomen." (FAC ¶ 51, PageID.226.) Plaintiff "was bedridden for weeks," and "developed a mass protruding from his abdomen that grew to approximately the size of a baseball." (*Id.*) Plaintiff sought medical care but "MRF Healthcare Officials" claimed it was an overdeveloped muscle and that there was no protrusion," and "no additional care was provided." (*Id.* ¶ 52, PageID.227.)

In March 2018, Plaintiff "began developing a high fever, body aches, severe swelling and redness in his leg, and burning pain in his leg." (*Id.* ¶ 64, PageID.229.) Plaintiff "recognized these symptoms as the same symptoms that were present before his cellulitis diagnosis in 2013-2014" and "notified Defendant Healthcare Officials" of his "history and the treatment required." (*Id.*) "Defendant Healthcare Officials insisted that Plaintiff only had the flu and refused to provide him with proper treatment." (*Id.* ¶¶ 64-65, PageID.229.) Plaintiff was finally transferred to an external hospital on or about March 18, 2018, where he was diagnosed with cellulitis a second time." (*Id.* ¶¶ 66-67.) The hospital physician "ordered that Plaintiff see a specialist once the infection had been treated and the swelling had receded in order

to determine why the issue was recurring." (*Id.* ¶ 67, PageID.229-30.) When Plaintiff returned to MRF he was not provided with the proper antibiotics "for several days" and "was not allowed to see a specialist to determine why the issue was recurring." (*Id.* ¶¶ 68-69, PageID.230.) Plaintiff contends that Corizon and Papendick "are responsible for ensuring MDOC inmates see the necessary specialists to treat serious medical needs" and "[p]ursuant to Corizon's policy to deny necessary care for non-medical reasons, like cost-saving, Defendant Papendick denied Plaintiff[] a specialist visit." (*Id.* ¶ 70, PageID.230.)

Plaintiff alleges that he developed a second hernia in approximately April of 2018, and again sought care from MRF Healthcare Officials, who stated that they do not treat hernias. (*Id.* ¶ 53, PageID.227.) Plaintiff alleges that Defendants Martino and Adray "knew Plaintiff had a hernia as well as a golf ball sized mass sticking out of his body and refused to follow up or prescribe any medication," and as a result, the hernia got worse. (*Id.*) Plaintiff asserts he filed a grievance on this issue. (*Id.*)

In approximately August of 2018, Plaintiff again developed "the same symptoms he had previously," and informed "MRF Healthcare Officials … of his two previous incidents with cellulitis and that the hospital physician had specifically instructed him to inform the staff that the antibiotics available at MRF are insufficient to treat this type of infection, so he must receive external care." (*Id.* ¶

71, PageID.230.) The "Defendant Healthcare Officials" instead gave Plaintiff Tylenol and sent him back to his cell. (*Id.* ¶ 72, PageID.231.) Plaintiff continued to present a fever and swollen red legs, and Defendant Farris, "[d]espite knowledge of Plaintiff's repeated problems and history, … merely instructed the nurses to give him an antibiotic and send him back to his cell." (*Id.* ¶ 73, PageID.231.) And "[w]hile Farris stated she would follow up with Plaintiff about the problems he was experiencing, she did not and neither did the nurses Duncan or Adray." (*Id.*) Plaintiff claims that Farris would "routinely wait several days" to see Plaintiff, and "[o]n several occasions he had to go to the hospital as a result of these delays with one hospital visit lasting a month." (*Id.*)

Plaintiff eventually "collapsed and had to be carried to healthcare, where officials finally transferred him to the external hospital," where he remained for two weeks, receiving IV antibiotics. (*Id.* ¶¶ 74-75, PageID.231.) Plaintiff was then transferred to Duane Waters hospital, an MDOC hospital, where "one of the John Doe physicians made the decision to discontinue the IV antibiotics" and "sent Plaintiff back to MRF with only oral antibiotics." (*Id.* ¶ 75, PageID.232.)

Upon Plaintiff's return, he was reassigned from Farris to Martino as his medical provider. (*Id.* ¶ 76, PageID.232.) Martino told Plaintiff that "he needed to be on certain medications to strengthen his GI tract and prevent an internal

7

infection," but Plaintiff was not given the proper medication "[d]espite kiting and requesting said medication[.]" (*Id.*) Plaintiff alleges that "Martino was aware of this and acquiesced in the denial of prescribed medication despite knowledge of medical necessity and need to treat Plaintiff." (*Id.*) Plaintiff further complains that he was still not allowed to see a specialist. (*Id.* ¶ 77, PageID.232-33.) He alleges that "Defendant Corizon maintains a policy, practice, or custom that requires Defendant Papendick to send prisoners to the hospital or a specialist but then refuses to follow through with the prescribed and recommended treatment plans in order to save money and minimize the amount of outside medical care provided to incarcerated individuals." (*Id.* ¶ 78, PageID.233.)

In approximately December of 2018, Plaintiff's second hernia ripped further, "causing daily groin pain and difficulty using the restroom," and Plaintiff was denied care "from Defendants Healthcare Officials[.]" (*Id.* ¶ 54, PageID.227.) Plaintiff was bedridden for several weeks because of the pain. (*Id.* ¶ 55, PageID.227.) He continued to seek care and "MRF Healthcare Officials conducted an X-ray examination," but Plaintiff did not received a follow-up or results from the X-ray, and although Plaintiff continued to seek medical care, "an MRF Healthcare Official stated 'I don't know why you keep coming over. We aren't going to help with a hernia.'" (*Id.* ¶¶ 56-57, PageID.227-28.)

In approximately January of 2019, Plaintiff again developed symptoms of suspected cellulitis, sought treatment from MRF Healthcare Officials, which was denied for several days before Plaintiff was transferred to an external hospital again. (*Id.* ¶ 79, PageID.233.) Plaintiff was examined by a specialist at the hospital who could not properly diagnose Plaintiff while his infection was still active, but "suspected that the infection was either cellulitis or a more severe form of streptococcal." (*Id.* at ¶ 80, PageID.233-34.) The hospital physician "ordered a long-term antibiotic to prevent the infection from recurring, but specifically ordered that Plaintiff also be placed on a probiotic" to avoid developing "a stomach infection." (*Id.* ¶ 81, PageID.234.) Plaintiff was denied access to probiotics" and his stomach is "now in constant pain and his nutrition levels are off[.]" (*Id.* 82, PageID.234.)

Plaintiff alleges that he has since (at some unspecified time) developed a third hernia, causing "severe groin and testicular pain, … difficulties urinating [and] … ongoing constipation," which "Defendant Healthcare Officials" have treated by "plac[ing] Plaintiff on eight pills of stool softener per day" which "has caused severe diarrhea and even more pain." (*Id.* ¶¶ 58-59, PageID.228.) "Plaintiff continued to seek medical care and was given a second X-ray examination," but "never received a follow-up or result." (*Id.* ¶ 60.)

9

### 2. First Amendment Free Exercise of Religion Claim Against MDOC Defendants Warren, Leduc, Tolley, Horton, and Weston (Count III)

Plaintiff alleges that MRF Warden Patrick Warren, URF Warden Connie Horton, and MRF Defendants Robert Leduc, Julia Tolley, and Officer Weston violated his First Amendment right to free exercise of religion by transferring him from MRF to URF, which he claims "directly inhibits [his] ability to exercise his religion, as it removed his access to certified Kosher meals, as well as Shabbat and holiday services with *Minyan*[.]"[1] (FAC, Count III, ¶¶ 174-87, PageID.255-57.)

Plaintiff alleges that he is "an adherent of the Jewish faith," and that "[i]n addition to observing the Jewish Sabbath, the tenets of the Jewish faith also include eating only [certified] Kosher meals and observing Shabbat and holiday services with *Minyan*." (FAC ¶¶ 175-76, PageID.255.) Plaintiff states that "MRF is the only MDOC facility that can accommodate these important tenets of the Jewish faith," and that "URF and other MDOC facilities offer only non-certified Kosher meals and basic Jewish Sabbath services." (*Id.* ¶¶ 178-79, PageID.255.) Plaintiff claims that he "was under an administrative hold preventing MDOC from transferring him to

---

[1] A minyan is "the quorum required for Jewish communal worship that consists of ten male adults in Orthodox judaism and usually ten adults of either sex in Conservative and Reform judaism." https://www.merriam-webster.com/dictionary/minyan.

another facility due to the unique ability of MRF to accommodate Plaintiff's religious beliefs," but that "[o]n or about July 30, 2019, [he] was actually transferred to URF, in direct contradiction to the transfer hold[.]" (*Id.* ¶¶ 104, 180, 182, PageID.239, 256.)

Plaintiff alleges that prior to his transfer, on or about December 30, 2017, Defendant Leduc "called Plaintiff a 'fake ass Jew' and threatened to place Plaintiff on Security Threat Group ("STG") status" – which Plaintiff alleges "entails a significant reduction of freedoms and privileges" – "if Plaintiff did not sign off on the transfer hold so that he could be transferred to another facility." (FAC ¶¶ 85-86, PageID.234-35.) Plaintiff then claims that in January of 2018, Defendant Leduc called Defendant Tolley and told him to stop Plaintiff and ask him if he was a "real Jew" and a gang member, and that on July 9, 2018, Leduc "threatened Plaintiff with continued retaliation if Plaintiff did not sign off on the transfer hold." (*Id.* ¶¶ 88-89, PageID.235.) On April 5, 2019, Leduc made comments to Plaintiff such as "You're still here? I thought we got that hold off of you," which Plaintiff alleges "insinuat[es] that Defendants were attempting to get Plaintiff transferred and remove his religious hold." (*Id.* ¶ 91, PageID.236.)

Plaintiff alleges that on July 17, 2019, Defendant Tolley "asked Plaintiff if he was a participant in the program hosted by The Aleph Institute,[2] asked Plaintiff if he was a 'real Jew,'" "threatened Plaintiff with being transferred to another facility," and "also attempted to persuade Plaintiff to sign off on his transfer hold by promising that, if he did, he would only be transferred to another unit, rather than the threatened transfer to another facility if he did not," but that "Plaintiff did not sign off on his request." (FAC ¶ 102, PageID.238-29.) Plaintiff claims that on July 21, 2019, he filed a grievance regarding "Defendant Tolley's threat of retaliatory transfer to another facility and the resultant obstruction of Plaintiff's ability to practice his religious beliefs," but on July 30, 2019, he was transferred to URF "in direct contradiction to the transfer hold." (*Id.* ¶¶ 103-04, PageID.239.) Plaintiff filed a grievance regarding his transfer on July 31, 2019, which was subsequently denied as a duplicate grievance. (*Id.* ¶ 108, PageID.240.) Plaintiff claims that his transfer "would have to be approved by Warden Warren and Warden Horton," and that they

---

[2] According to The Aleph Institute Mission Statement, "[t]he Aleph Institute is a 501c3 certified non-profit Jewish organization dedicated to assisting and caring for the wellbeing of members of specific populations that are isolated from the regular community: U.S. military personnel, prisoners, and people institutionalized or at risk of incarceration due to mental illness or addictions. Aleph addresses their religious, educational, and spiritual needs, advocates and lobbies for their civil and religious rights, and provides support to their families at home left to fend for themselves." https://aleph-institute.org/wp/about/.

"failed to intervene and acquiesced as supervisors when Defendants Leduc and Trolley sought to have Plaintiff transferred to URF despite their knowledge that such a transfer would severely restrict Plaintiff's ability to freely exercise his religious beliefs." (*Id.* ¶ 184, PageID.256-57.)

Plaintiff alleges that on November 4, 2019, he was "informed that the Kosher oven at URF was broken and that the URF Kosher food prep line was using an alternative oven that was not Kosher to prepare Kosher meals." (FAC ¶ 139, PageID.248-49.) He "brought this to the attention of Defendant Weston, but Defendant Weston denied that this was true." (*Id.*) Plaintiff claims that on December 9, 2019, he saw "firsthand that the Kosher oven was indeed broken and the Kosher food was being prepared in an oven that was not Kosher," and that he "again notified Defendant Weston, and nothing was done to remedy the problem." (*Id.* ¶ 140, PageID.249.) Plaintiff filed a grievance regarding the lack of a Kosher oven for Kosher meal prep." (*Id.* ¶ 141, PageID.249.) Defendant Weston tried to persuade Plaintiff to drop the grievance, but he refused. (*Id.* ¶ 142, PageID.249.) Weston subsequently forced Plaintiff to work the "non-Kosher" food line in January 2020. (*Id.* ¶¶ 149-51, PageID.250-51.)

### 3. First Amendment Retaliation and Conspiracy by All MDOC Defendants Except Wardens Horton and Warren and Nurses Duncan and Adray (Counts IV and V)

Plaintiff alleges in Count IV of his First Amended Complaint that all MDOC Defendants (except Wardens Horton and Warren, and Nurses Duncan and Adray) retaliated against Plaintiff for filing grievances by:

- transferring Plaintiff to another facility so as to deliberately inhibit his ability to freely exercise his religion;

- denying Plaintiff access to food that satisfies the requirements of his religious beliefs;

- improperly confiscating or damaging Plaintiff's personal property;

- filing and upholding false misconduct charges against Plaintiff which resulted in an unjustified loss of privileges; and

- conducting excessive and unreasonable searches of Plaintiff's person and cell.

(FAC ¶ 193, PageID.258.) Plaintiff also claims that Defendants Warren, Russell and Taylor rejected Plaintiff's grievances out of retaliation for his protected conduct of filing grievances (*id.* ¶¶ 100-01, PageID.237-38), and that Defendant Weems "tore the covers off of two religious books, ripped Plaintiff's playing cards, and confiscated various other belongings," stating that "he had been sent by his Sergeant because the administration was upset that Plaintiff had been writing grievances." (*Id.* ¶¶ 118-19, PageID.242-43.) Weems then wrote Plaintiff a class one misconduct

ticket, alleging that he found six tattoo needles in Plaintiff's footlocker, and Plaintiff alleges that Defendant Descroche refused to intervene when he reviewed the ticket. (*Id.* ¶¶ 120-21, PageID.243.) Weems also wrote Plaintiff a class two misconduct ticket for being out of place without permission, and Defendant Sturm upheld the ticket. (*Id.* ¶¶ 125-126, PageID.244-45.) Both tickets were upheld at the subsequent hearings. (*Id.* ¶¶ 129-30, PageID.246-47.) Plaintiff also claims that Defendants Magayhee and Coullard delayed Plaintiff so that he could not collect his items ordered from the store "as part of the ongoing retaliation." (*Id.* ¶ 128, PageID.245-46.)

Plaintiff further claims in Count V that those same MDOC Defendants (again, all MDOC Defendants except Warren, Horton, Adray, and Duncan) conspired to deprive Plaintiff of his constitutional rights, stating that "[o]n multiple occasions, individual defendants carrying out retaliatory actions against Plaintiff made verbal comments that the retaliation was a result of other defendants indicating that Plaintiff had been filing grievances," and that Plaintiff "has repeatedly sought assistance from supervisors, up to and including the Wardens of MRF and URF and their staff, and no assistance has been granted." (FAC ¶ 201, PageID.260.)

## B.    The MDOC Defendants' Motion to Dismiss (ECF No. 32)

On February 12, 2021, the MDOC Defendants filed a partial Motion to

15

Dismiss Plaintiff's Amended Complaint. (ECF No. 32, Defs.' Mot.)[3] The MDOC Defendants first argue that Plaintiff's "wide-ranging" complaint violates the Federal joinder rules because Plaintiff attempts to combine many unrelated claims against many different defendants at two different facilities. The MDOC Defendants next contend that Plaintiff fails to state an Eighth Amendment deliberate indifference claim against Defendants Adray and Duncan regarding his claim that they failed to treat his streptococcal infections. The MDOC Defendants further argue that the alleged mere denial of an administrative grievance or failure to supervise fails to state a claim against Defendants Warren, Horton, Russell, Greason, Steece, Taylor, Evans, Balbierz, and Descroche, and that Plaintiff does not allege that any of the MDOC Defendants denied him Kosher meals when he was transferred to URF. Finally, the MDOC Defendants assert that Plaintiff fails to state a conspiracy claim, fails to plead that claim with particularity, and that the claim is barred by the intra-corporate conspiracy doctrine.

On March 5, 2021, Plaintiff filed a Response in Opposition to the MDOC Defendants' Motion to Dismiss. (ECF No. 34, Pl.'s Resp.) Plaintiff first argues that

---

[3] The Court notes that this motion is more properly titled a "*Partial* Motion to Dismiss" because, as discussed herein, the MDOC Defendants do not directly address all claims against them or all the retaliation claim against all MDOC Defendants.

the First Amended Complaint satisfies the joinder rules because "the **entirety** of Plaintiff's constitutional violation claims arise out of Defendants' denial of medical care." (*Id.* at p. 8, PageID.571 (emphasis added).) Plaintiff also contends that he has pleaded the necessary factual allegations to state constitutional claims against all of the MDOC Defendants. Finally, Plaintiff contends he has sufficiently stated a conspiracy claim against the MDOC Defendants.

The MDOC Defendants did not file a reply brief.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need

not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue* Shield, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried* Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

## III.  ANALYSIS

### A.  Whether Plaintiff's FAC Violates Fed. R. Civ. P. Joinder Rules

The MDOC Defendants argue that Plaintiff's FAC is in violation of the federal rules governing joinder, Fed. R. Civ. P. 18 and 20, claiming that Plaintiff has attempted to combine into one lawsuit many unrelated claims against many different

defendants. (Defs.' Mot. at pp. 9-10, PageID.543-44.) Defendants assert that the majority of Plaintiff's claims relate to alleged constitutional violations concerning his medical care while incarcerated, but that he also asserts claims for various forms of retaliation against defendants not involved in the medical claims, and First Amendment free exercise of religion claims at two different facilities. (*Id.*) The MDOC Defendants argue that these different claims belong in different suits, and that the Court should sever the unrelated Eighth Amendment claims and Defendants in this case. (*Id.*)

In response, Plaintiff states that:

In this case, **the entirety of Plaintiff's constitutional violation claims arise out of Defendants' denial of medical care**. Plaintiff's retaliation claims against defendants not directly involved in the medical claims **arise as a result of Plaintiff filing grievances after being denied medical care**. **All of Plaintiff's claims arise out of the same series of occurrences, namely the denial of medical care and Plaintiff filing grievances as a result**.

(Pl.'s Resp. at p. 8, PageID.571 (emphases added).)[4] Based on this unequivocal statement, the Court may find that Plaintiff is abandoning or withdrawing his claims in Count III (First Amendment – Free Exercise of Religion), and any retaliation and

---

[4] The Court further notes that, consistent with this assertion, the "Statement of Facts" section in Plaintiff's Response brief only addresses Plaintiff's medical care by the Corizon Defendants, and contains no allegations regarding any of the MDOC Defendants or regarding non-medical care claims. (See Pl.'s Resp. at pp. 1-6, PageID.565-69.)

conspiracy claims in Counts IV and V that are not based on the alleged denial of medical care. (*See id.* at p. 9, PageID.572 ("the acts alleged are related in that the retaliation claim resulted from Plaintiff's grievances having to do with his Eighth Amendment claim of Deliberate Indifference to Serious Medical Need").) *See Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned.") (citing *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010)), *aff'd*, 597 F. App'x 379 (6th Cir. 2015); *see also Carroll v. Lamour*, No. 20-10879, 2021 WL 1207359, at *2 (E.D. Mich. Mar. 31, 2021) (finding that plaintiff's failure to mention any other claim, beside her excessive force claim, resulted in an abandonment of all of her other claims). This affirmative abandonment of the merits of these other, "non-medical treatment" claims, renders the MDOC Defendants' request to sever the unrelated claims and defendants as moot.

However, even if, despite Plaintiff's unequivocal assertion in his Response brief, Plaintiff still seeks to maintain his claims against the MDOC Defendants in Count III and retaliation and conspiracy claims that are not based on the alleged denial of medical care in Counts IV and V, the Court finds that these unrelated claims

and defendants nevertheless should be dismissed. Under Federal Rule of Civil Procedure 21, the Court may dismiss or sever parties and claims in a civil action:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. While the joinder of claims, parties and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), this does not mean that parties should be given free reign to join multiple defendants and multiple claims into a single suit when the claims are unrelated, or to proceed with multiple defendant litigation on unrelated claims in order to circumvent the filing fee requirements for federal civil actions or the PLRA's three strikes provision. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998).

Fed. R. Civ. P. Rule 20(a) limits the joinder of parties in a single lawsuit, whereas Fed. R. Civ. P. 18(a) limits the joinder of claims. Rule 18(a) states: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20(a)(2) governs when multiple defendants may be joined in one action, and provides:

> Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative

with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Where multiple parties are named, the analysis under Fed. R. Civ. P. Rule 20 precedes that under Fed. R. Civ. P. Rule 18:

Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18...

Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all ..."

*Proctor v. Applegate,* 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (*quoting Garcia v. Munoz,* 2008 WL 2064476, *3 (D.N.J. May 14, 2008) (*quoting*, Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal Practice & Procedure Civil 3d, § 1655)).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor,* 661 F. Supp. 2d at 778; *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the

plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner."). A federal court may consider many different factors when determining whether civil rights claims arise from the same transaction or occurrence, including, "the time period during which the alleged acts occurred; whether the acts ... are related; whether more than one act ... is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Proctor,* 661 F. Supp. 2d at 778 (*quoting Nali v. Michigan Dep't of Corrections*, No. 07-10831, 2007 WL 4465247, * 3 (E.D. Mich. Dec. 18, 2007)).

In this case, Plaintiff's First Amendment Free Exercise of Religion claim and his retaliation and conspiracy claims not based on his medical care, asserted against the non-healthcare employee MDOC Defendants, are unrelated to his Eighth Amendment deliberate indifference claims against Defendants Adray and Duncan and the Corizon Defendants. The two sets of claims concern different facts, different defendants, and at times different institutions, and do not meet the transactional relatedness requirement of Rule 20. Given such difference, the Court finds that joinder of the multiple claims and multiple defendants in one civil rights case is inappropriate.

Rule 21 provides two remedial options for misjoinder: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004). Several federal courts have interpreted "on just terms" to mean "without gratuitous harm to the parties." *See Harris v. Gerth*, No. 08-CV-12374, 2008 WL 5424134, *5 (E.D. Mich. Dec. 30, 2008) (citing cases). Some of Plaintiff's claims may be barred by limitations if they are dismissed at this time, but some, including claims related to Plaintiff's transfer from MRF to URF, would not be barred. The dates the grievances were allegedly denied, and thus the date Plaintiff could have brought his claims, are not alleged in the FAC. The Court finds that, even if Plaintiff had not affirmatively abandoned or withdrawn his non-medical-care claims in Counts III, IV and V of his FAC, dismissal of the multiple claims involving different defendants, rather than severance, is the more appropriate course of action. The Court therefore dismisses the First Amendment Free Exercise of Religion claim (Count III), and the retaliation and conspiracy claims in Counts IV and V that are not based on alleged inadequate medical care, along with the corresponding defendants, based upon misjoinder. This dismissal is without prejudice.

As a result, Plaintiff's only remaining claims against the MDOC Defendants would be his Eighth Amendment claims against MDOC Defendants Adray and Duncan, and his retaliation and/or conspiracy claims related to the alleged denial of medical care to Plaintiff in Counts IV and V. The Court will now address those remaining claims.

## B. Plaintiff's Eighth Amendment Deliberate Indifference Claims Against Defendants Adray and Duncan

The MDOC Defendants argue that Plaintiff has failed to state a claim of Eighth Amendment deliberate indifference against Defendants Adray and Duncan regarding his claim that those defendants failed to treat his streptococcal infections. (Defs.' Mot. at pp. 12-14, PageID.546-48.) Plaintiff pleads, with regard to his streptococcal infections, that "[d]espite knowledge of Plaintiff's repeated problems and history, [Corizon] Defendant Farris merely instructed the nurses to give him an antibiotic and send him back to his cell. While Farris stated that she would follow up with Plaintiff about the problems he was experiencing, she did not and neither did the nurses Duncan or Adray." (FAC ¶ 73, PageID.231.) This is the sole allegation against Defendants Duncan or Adray, or even against "nurses" in general, with regard to Plaintiff's streptococcal infection claim in Count II.[5]

[5] As this Court explained in its prior Opinion and Order in this case, general allegations regarding "the Healthcare Officials" collectively are insufficient and

To state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail on a claim of deliberate indifference, a plaintiff must satisfy objective and subjective components. *Farmer v. Brennen*, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need, while the subject component requires that prisoner officials had "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component requires a showing that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it. *Comstock v. McCrary*, 273 F.3d

---

defendants cannot be held liable under § 1983 unless Plaintiff has alleged that each defendant was personally involved in the alleged constitutionally inadequate medical care provided to Plaintiff or that each defendant otherwise encouraged or condoned others in providing such inadequate medical care. (Opinion and Order at pp. 28-30, PageID.459-61, citing, in part, *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation.").)

Plaintiff further alleges that "Defendants Adray, Farris, Martino and Duncan, with knowledge of Plaintiff's serious medical needs, denied medical treatment to Plaintiff." (FAC ¶ 62, PageID.228.) However, this general allegation fails to state when, how or what each, or indeed any, of these defendants did to "den[y] medical treatment to Plaintiff," and thus fails to support Plaintiff's deliberate indifference claim.

693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). A plaintiff need not show that the defendant acted with the very purpose of causing harm, but most show something greater than negligence or malpractice. *Farmer*, 511 U.S. at 835, The standard has generally been equated with one of "recklessness." *Id.* at 836. Importantly, "the subjective component of a deliberate indifference claim must be addressed for each officer individually." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008) (alternations incorporated) (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)). "So the evidence must show that the specific individual was aware of facts from which he or she could infer a substantial risk of serious harm." *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018).

The MDOC Defendants argue that this Court has evaluated Plaintiff's claim regarding this same alleged conduct with regard to Corizon Defendant Farris and granted Farris's motion to dismiss this claim. (Defs.' Mot. at pp. 13-14, PageID.547-48.) (See Opinion and Order at pp. 31-33, PageID.462-64.) Specifically, this Court held that, accepting all of Plaintiff's allegations against Farris as true – that she "merely instructed the nurses to give [Plaintiff] an antibiotic and send him back to his cell," and that while she "stated that she would follow up with Plaintiff about the problems he was experiencing, she did not and neither did the nurses Duncan and

27

Adray" – were insufficient to plead an Eighth Amendment claim with regard to Farris's treatment of Plaintiff, because "he was prescribed an antibiotic, and while he complains treatment was not prompt or as timely as he thinks it should have been, he does not plead an absence of medical care or treatment." (Opinion and Order at pp. 32-33, PageID.463-64.) The MDOC Defendants contend that Plaintiff's claims against MDOC Defendants Adray and Duncan, based on these same allegations, similarly should be dismissed. (Defs.' Mot. at p. 14, PageID.548.)

The Court agrees, and finds that Plaintiff fails to state a claim against MDOC Defendants Adray and Duncan regarding Plaintiff's claim in Count II that they failed to treat his streptococcal infections.

However, the Court notes that Plaintiff also pleads that Defendant Adray, along with Corizon Defendant Martino, in April 2018 "knew Plaintiff had a hernia as well as a golf ball sized mass sticking out of his body and refused to follow up or prescribe any medication" and "[a]s a result the hernia got worse." (FAC ¶ 53, PageID.227). The MDOC Defendants have not addressed this claim against Defendant Adray in their motion to dismiss, perhaps because this is the sole claim the Court, accepting Plaintiff's allegations as true, permitted to go forward against Defendant Martino. (See Opinion and Order at p. 35, PageID.466 (finding Plaintiff sufficiently pleaded an Eighth Amendment violation against Defendant Martino

based on her alleged denial of care regarding this April of 2018 incident only).) The Court finds that this Eighth Amendment claim against Defendant Adray, related to Plaintiff's alleged denial of care for his hernia in April of 2018 in Count I, will be permitted go forward.

### C. Plaintiff's Claims Against the Non-Healthcare MDOC Defendants

The MDOC Defendants argue that claims against several of the non-healthcare MDOC Defendants should be dismissed for failure to state a claim.

### 1. MDOC Defendants Horton, Warren and Russell

The MDOC Defendants argue that Plaintiff's only claims against Defendant Wardens Horton and Warren, and Defendant Grievance Manager Russell, are that they denied Plaintiff's grievances or failed to supervise their employees, and that such claims do not constitute actionable unconstitutional behavior. (Defs.' Mot. at pp. 15-16, PageID.549-50.)

Plaintiff responds that his "allegations against non-healthcare MDOC Defendants are pleaded in relation to the retaliatory and acquiescing nature of their conduct and not a mere failure to act." (Pl.'s Resp. at p. 14, PageID.577.) Plaintiff asserts that "Defendants Warren and Russell knowingly consented to the unconstitutional conduct of healthcare officials," and thus "had knowledge of the unconstitutional conduct by healthcare officials and further acquiesced in retaliatory

conduct." (*Id.*, citing FAC ¶ 100.) Plaintiff does not address his claim against Defendant Horton.

Looking at the FAC, Defendants Horton, Warren and Russell are only mentioned in a handful of paragraphs in the body of the FAC:

> 100. Defendant Warden **Warren** reviewed the grievances[6] and upheld the wrongful rejection of the grievance[s]. Defendant **Richard Russell**, the manager of the grievance section of the office of legal affairs for the MDOC, also upheld the wrongful rejection. Despite Defendant Taylor, Defendant **Warren** and Defendant **Russell's** explicit knowledge that Plaintiff had been prescribed medication by a doctor and was being refused the medication by healthcare, Defendants rejected Plaintiff's grievances and acted out of retaliation for Plaintiff's protected conduct of filing grievances and with deliberate indifference to his serious medical need by permitting healthcare to deny medication prescribed by a doctor for a diagnosed medical condition. Defendants are supervisors and administrators for the MDOC and have failed to intervene and acquiesced in the unconstitutional behavior of their subordinates in denying care to Plaintiff despite Plaintiff properly filing a grievance on the issue. This process continuously happens and demonstrates the futility of grievance system as orchestrated by the officials of the MDOC.

***

> 108. On or about July 31, 2019, Plaintiff filed a grievance pertaining to the actual retaliatory transfer and the resultant intentional obstruction of Plaintiff's ability to practice his religious beliefs. Plaintiff's grievance was denied as a duplicate, despite the fact that it was clearly

---

[6] In the preceding paragraphs of the FAC, Plaintiff pleads that he filed grievances regarding his medical care on April 12, 2018, May 11, 2018, May 30, 2018, February 20, 2019, March 18, 2019, and one more without date. (FAC ¶¶ 92-94, 96-97, 99, PageID.236-37). Plaintiff also claims that he filed other, non-healthcare related grievances. (*Id.* ¶¶ 95, 98, PageID.236-37.)

not the same issue as Plaintiff was no longer under a threat of retaliatory transfer, but had now indeed been transferred to a known disciplinary facility where he would not be permitted to practice his religious beliefs. Plaintiff's grievance was denied by Defendant Taylor and approved by Defendant Greason. After appealing to step three, Defendant **Russell** upheld the rejection of Plaintiff's grievance regarding the retaliatory transfer to URF.

\*\*\*

110. On or about August 19, 2019, Plaintiff sent a letter to Warden Defendant **Warren**, explaining the difficulties he had faced in filing legitimate grievances. Plaintiff requested that Defendant **Warren** see to it that his grievances be processed properly. No response was received and no action was taken in response to Plaintiff's letter.

111. Defendant Warden **Horton** then assumed the position of Warden and began denying Plaintiff's grievances without reason. Each step Plaintiff provided the necessary receipts and disbursements regarding his guitar yet Defendant Warden **Horton** ignored them and continued to deny Plaintiff's grievances.

\*\*\*

184. In order for Plaintiff to be transferred from MRF to URF, the transfer would have to be approved by Warden **Warren** and Warden **Horton**. Accordingly, these Defendants failed to intervene and acquiesced as supervisors when Defendants Leduc and Tolley sought to have Plaintiff transferred to URF despite their knowledge that such a transfer would severely restrict Plaintiff's ability to freely exercise his religious beliefs.

(FAC ¶¶ 100, 108, 110-11, 184, PageID.237-38, 241, 256-57 (emphases added).)

"A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corrections Corp. of America*, 102

31

F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)). Rather, an individual's "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Moreover, the plaintiff must allege the defendant's "personal involvement *in the allegedly unconstitutional acts*" themselves. *Hyman v. Officer Clyde Lewis*, No. 19-11821, 2021 WL 795568, at *3 (E.D. Mich. Mar. 2, 2021) (emphasis added). *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (holding that to state a valid Section 1983 claim, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights"). Accordingly, the law is clear that merely being aware of an alleged constitutional violation and failing to "take appropriate action ... is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). This is not to say that a prison administrator could never be liable for any act of his subordinates. A supervisor may be deemed to be "actively involved" in unconstitutional conduct if he "encouraged the specific incident of

misconduct or in some other way *directly participated in it.*" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (emphasis added).

Plaintiff does not allege that Defendants Warren, Horton or Russell are medical providers, or that they had the training necessary to evaluate Plaintiff's specific medical needs. Thus, his claims against these defendants boils down to an assertion that they were a supervisor who failed to take the action Plaintiff was requesting. However, in *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016), the Sixth Circuit stated, "[s]upervisors are often one step or more removed from the actual conduct of their subordinates; therefore, the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct[...] Consequently, a mere failure to act will not suffice to establish supervisory liability." *Id.* at 241. That is precisely the case here; Plaintiff's constitutional complaints are about the alleged denial of medical care for his hernia and streptococcal infections. Those decisions were made by Corizon's medical professionals, not the MDOC's administrators. Plaintiff does not allege that Defendants Warren, Horton or Russell directed the medical providers to take (or not take) any particular action. Nor does he allege that these defendants interfered in any way with the normal course of providing medical care within the MDOC.

Nor are Plaintiff's allegations that Warren, Horton or Russell failed to address his complaints adequately or respond to his grievances sufficient to state a claim for relief under section 1983. While a prisoner has a First Amendment right to file grievances against prison officials, *see Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000), "the First Amendment does not impose any affirmative obligation on the government to listen, [or] to respond [to]" such a petition. *See Smith v. Ark. State Highway Employees, Local 1315,* 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."). Moreover, a prisoner does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corrs.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (collecting cases). Further, an alleged failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability on any underlying claim. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in the grievance."). "The mere denial of a

prisoner's grievance states no claim of constitutional dimension," *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003), "as there is no inherent constitutional right to an effective prison grievance procedure." *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)); *see also Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) (observing that the denial of a grievance complaining of inadequate medical care "is not the same as the actual denial of a request to receive medical care"). Accordingly, to the extent that Plaintiff is dissatisfied with the investigation of his complaints and the responses to his grievances, he fails to state a claim on which relief may be granted. *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) ("Although a prisoner has a First Amendment right to file grievances against prison officials, a state has no federal due process obligation to follow all of its grievance procedures.") (internal citations omitted); *Proctor*, 661 F. Supp. 2d at 766-67.

In sum, because Defendants Warren, Horton and Russell are not alleged to have any personal involvement in the medical decisions at issue, nor to have actively encouraged or interfered with those medical decisions, Plaintiff's § 1983 claims against them fails. *See Winkler*, 893 F.3d at 898 (mere knowledge of an inmate's medical condition was insufficient to find supervisors deliberately indifferent). Plaintiff's claims against Defendants Warren, Horton and Russell are dismissed.

## 2. MDOC Defendants Greason, Steece, Taylor, Evans, Balbierz, and Descroche

The MDOC Defendants also argue that, to the extent Plaintiff's Amended Complaint alleges that Defendants Greason, Steece, Taylor, Evans, Balbierz, and Descroche failed to address Plaintiff's grievances or complaints, those claims fail as a matter of law for the reasons set forth above. (Defs.' Mot. at pp. 17-18, PageID.551-52.)

Plaintiff does not respond to this argument, and indeed does not even mention Defendants Greason, Steece, Evans, or Balbierz in his Response (and only mentions Defendants Taylor and Descroche in passing when discussing other defendants). Plaintiff is thus deemed to have abandoned any claims against Defendants Greason, Steece, Taylor, Evans, Balbierz, and Descroche regarding their alleged failure to address Plaintiff's grievances or complaints. "The Sixth Circuit has held that a party's failure to respond to or oppose an issue raised in a Rule 12(b)(6) motion may result in waiver of the issue." *Hazime v. Fox TV Stations, Inc.*, No. 12-cv-15072, 2013 WL 4483485, at *8 (E.D. Mich. Aug. 19, 2013) (quoting *Simpson v. G4S Secure Solution (USA), Inc.*, No. 12-2875, 2013 WL 2014493, *3 (W.D. Tenn. May 13, 2013)) (citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013); *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008)).

Even considering this argument, for the same reasons as discussed above with respect to Defendants Warren, Horton, and Russell, the Court finds that Plaintiff's claims that Defendants Greason, Steece, Taylor, Evans, Balbierz, and Descroche failed to properly or adequately respond to his grievances fails to state a claim on which relief may be granted, and those claims are dismissed. *See also O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (holding that a defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983").

### D. Plaintiff's Conspiracy Claim

#### 1. Failure to state a claim

Plaintiff asserts a civil conspiracy claim against all of the MDOC Defendants <u>except</u> Defendant Wardens Warren and Horton, and the two MDOC healthcare Defendants, Nurses Adray, and Duncan. (FAC Count V, PageID.259-60.) Plaintiff also does not assert this claim against the Corizon Defendants. (*Id.*) Plaintiff alleges in support of this claim that:

199. At all times relevant, Plaintiffs [sic] had a clearly established right to be free from conspiracy to violate his constitutional right to be free from retaliation for engaging in protected conduct.

200. At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States. Defendants agreed to retaliate against Plaintiff for his engagement in protected conduct.

201. Defendant Officers' actions demonstrate a broad conspiracy to deprive Plaintiff of his constitutional rights. On multiple occasions, individual defendants carrying out retaliatory actions against Plaintiff made verbal comments that the retaliation was a result of other defendants indicating that Plaintiff had been filing grievances. In addition, Plaintiff has repeatedly sought assistance from supervisors, up to and including the Warden's [sic] of MRF and URF and their staff, and no assistance has been granted. Given the wide range of coordinated retaliatory actions taken against Plaintiff, and the many people who have turned a blind eye to Plaintiff's suffering, it is apparent that Defendants conspired to deprive Plaintiff of his rights.

202. Defendant Officers' actions and inactions constitute an impermissible conspiracy to deprive an individual of their rights to be free from retaliation for protected conduct in violation of 42 U.S.C § 1983 and the First Amendment to the United States Constitution.

203. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

(FAC, PageID.269-60.)

Defendants contend that Plaintiff fails to adequately plead an actionable civil conspiracy claim. To prove a civil conspiracy, Plaintiff must show that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial

objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). However, the Sixth Circuit "do[es] not require direct evidence; it is enough to produce circumstantial evidence sufficient to reasonably infer the existence of a conspiracy." *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019). Defendants assert that Plaintiff's allegations are conclusory and speculative, and that he merely alleges events that occurred over a period of time involving numerous individuals and multiple prisons and administrative offices, but that he has no allegations establishing a link between the alleged conspirators or any agreement between them. (Defs.' Mot. at p. 20, PageID.554.)

Plaintiff broadly asserts that his "allegations of conspiracy are adequately stated in its 'statement of facts' section of its Amended Complaint, specifically in Paragraphs 85-150." (Pl.'s Resp. at p. 15, PageID.578.) Plaintiff fails to otherwise explain how his "allegations of conspiracy are adequately stated" by merely referring to 65 paragraphs in his Amended Complaint. He instead cites to four

paragraphs, "[f]or example." (*Id.* at pp. 15-16, PageID.578-79, citing FAC ¶¶ 118-21.) Those paragraphs provide:

118. On or about September 21, 2019, Plaintiff was woken up by Defendant Weems entering Plaintiff's room and tearing it apart. Defendant Weems tore the covers off of two religious books, ripped Plaintiff's playing cards, and confiscated various other belongings.

119. During this incident, Defendant Weems indicated that he had been sent by his Sergeant because the administration was upset that Plaintiff had been writing grievances. Defendant Weems continued to make statements such as "Apparently you have been bothering the administration writing grievances, so this had to happen." and "For future reference, maybe you shouldn't write anymore grievances." This demonstrates the widespread knowledge around the facilities that Plaintiff was engaged in constitutional protected conduct and was then asked to stop because it was bothersome to the administration. This is common place in the MDOC and negatively impacts prisoners [sic] ability to effectively utilize the grievance system in the face of threats in response to their constitutionally protected conduct.

120. After recognizing Plaintiff's protected conduct, Defendant Weems proceeded to write Plaintiff a class one misconduct ticket, falsely alleging that he found six tattoo needles in Plaintiff's footlocker. The untruthfulness of this claim is obvious from the fact that Defendant Weems never photographed or otherwise preserved the tattoo needles he allegedly found, Defendant Weems indicated that Plaintiff's footlocker was labeled with his name when in fact it had not yet been labeled after his arrival, and Defendant Weems indicated that the footlocker was within Plaintiff's area of control when in fact it was outside of it.

121. Plaintiff's misconduct ticket was then reviewed by Defendant Descroche. Defendant Descroche refused to consider the obvious discrepancies in the evidence and instructed Plaintiff to plead guilty to receive a lesser punishment, which Plaintiff refused. Defendant Descroche failed to intervene to prevent Defendant Weems' retaliatory

action. Defendant knew of Plaintiff's protected conduct and furthered the ongoing retaliation against Plaintiff throughout the facility by failing to properly investigate Plaintiff's claims.

(FAC, ¶¶ 118-21, PageID.242-43.) Plaintiff contends that "[t]hese specific instances demonstrate an explicit agreement amongst MDOC Defendants to retaliate against Plaintiff and deny him appropriate medical care because of his grievance." (Pl.'s Resp. at p. 16, PageID.579.)

The Court finds that Plaintiff's suggestion that the MDOC Defendants were conspiring with one another to deprive Plaintiff of adequate medical care unconvincing. The one incident involving Defendant Weems alleged above has nothing to do with Plaintiff's medical care, and Plaintiff's conspiracy claim "to deprive Plaintiff of his constitutional rights" for filing grievances is otherwise vague and conclusory and fail to sufficiently allege that the defendants acted in concert or had the requisite single plan, and thus fail to sufficiently and plausibly plead a conspiracy claim. *See Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014) (plaintiff's allegations that the "'defendants falsified reports, misrepresented facts, filed false charges, harassed, attempted to intimidate, oppress [sic], threatened, implied illegal procedures, illegal actions, misconducts, discriminated, and negligence and/or reckless [sic] disregard for the truth ... etc.'" failed to satisfactorily plead a § 1985(3) claim) (citing *Spadafore*, 330 F.3d at 854).

In addition, while a conspiracy may be pleaded with circumstantial evidence, "circumstantial evidence cannot support a finding of conspiracy when the evidence is equally consistent with independent conduct." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999). Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a course of treatment that occurred over a period of time involving numerous individuals. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Thus, the Court finds that Plaintiff has failed to sufficiently plead a conspiracy claim against the MDOC Defendants named in Count V regarding the alleged denial of medical care.

### 2. Intracorporate conspiracy doctrine

The MDOC Defendants also argue that Plaintiff's civil conspiracy claim is barred by the intracorporate conspiracy doctrine. (Defs.' Mot. at p. 21, PageID.555.) The MDOC Defendants assert that they are members of the same collective entity and cannot conspire together as a matter of law.

The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926

F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). In *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985, claims. The *Jackson* court explained that, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019) (same).

Plaintiff argues in response that the intracorporate conspiracy doctrine does not apply in this case because "[t]here are two different groups of individual defendants: those employed by the MDOC and those employed by Corizon." (Pl.'s Resp. at pp. 16-17, PageID.579-80.) Plaintiff relies on *Vinson v. Michigan Department of Corrections*, No. 14-11130, 2015 WL 9897844 (E.D. Mich. Oct. 30. 2015), amended report and recommendation *adopted in part and rejected in part by* 2016 WL 245286 (E.D. Mich. Jan. 21, 2016), which found, in part, that "the intracorporate conspiracy doctrine does not bar a conspiracy claim where employees of MDOC and Corizon are alleged to have participated [in the alleged conspiracy]."

*Id.* at *10 (noting "Defendants do not explain how MDOC and Corizon are the 'same legal entity.'").

However, *Vinson* does not apply to the facts in this case. In *Vinson*, the plaintiff's "complaint details specifically the common scheme and plan whereby the Corizon defendants in concert with employees of MDOC 'conspired to systematically ignore all requests and pleas for medical treatment by plaintiff for his serious medical condition and instead agreed to a plan where defendant nurses would routinely write down plaintiff's complaints of pain, vomiting, weight loss and nausea; perform a perfunctory physical examination and return him to the cell without real and/or adequate medical treatment for his serious medical condition.'" *Vinson*, 2015 WL 9897844, at *8.

Here, Plaintiff's civil conspiracy claim is asserted only against the Non-Healthcare MDOC Defendants, and expressly not against the MDOC Healthcare Defendant Nurses Adray and Duncan, or the Corizon Defendants. Accordingly, Plaintiff does not allege in his complaint that the MDOC and Corizon defendants conspired to deny him medical care. Rather, Plaintiff's conspiracy claim is expressly limited solely to a subset of the MDOC Defendants and only related to his claims that they retaliated against him for filing grievances. Plaintiff further does not allege in his Amended Complaint that the MDOC Defendants were acting outside the scope

of their employment. Accordingly, the Court finds that Plaintiff's conspiracy claim, if sufficiently pleaded, would be barred by the intracorporate conspiracy doctrine. Accordingly, for all of these reasons, Plaintiff's conspiracy claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the MDOC Defendant's partial motion to dismiss as follows:

(1) Plaintiff has ABANDONED or WITHDRAWN his claims in Count III (First Amendment – Free Exercise of Religion) and his retaliation and conspiracy claims in Counts IV and V that are not based on alleged denial of medical care; or

(2) alternatively, the Court finds that Plaintiff's claims in Count III and those claims in Counts IV and V unrelated to the alleged denial of medical care are DISMISSED based upon misjoinder.

The Court further finds that:

(1) Plaintiff's Eighth Amendment claims against Defendants Adray and Duncan regarding alleged failure to treat his streptococcal infection in Count II are DISMISSED, but Plaintiff's claim against Defendant Adray regarding her treatment of Plaintiff's hernia in April of 2018 in Count I may proceed;

(2) Plaintiff's claims against MDOC Defendants Horton, Warren and Russell are DISMISSED;

(3) Plaintiff's claims in Count IV that MDOC Defendants Greason, Steece, Taylor, Evans, Balbierz, and Descroche failed to address Plaintiff's complaints or grievances are DISMISSED; and

(4) Plaintiff's conspiracy claim (Count V) is DISMISSED.

Therefore, Plaintiff's remaining claims are (1) Count I against Defendants Juliana Martino and Lisa Adray regarding their treatment of Plaintiff's hernia in April of 2018; and (2) Count IV, limited to claims regarding alleged denial of medical care, except for Plaintiff's claims that Defendants Russell, Greason, Steece, Taylor, Evans, Balbierz, and Descroche failed to address Plaintiff's complaints or grievances, which have been dismissed.

IT IS SO ORDERED.


Dated: June 29, 2021                           s/Paul D. Borman
                                               Paul D. Borman
                                               United States District Judge