UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMERON TIETZ #827870,

                      Plaintiff,              Case No. 20-cv-10814

v.                                   Paul D. Borman
                                   United States District Judge
CORIZON HEALTH, INC., PATRICK
WARREN, ROBERT LEDUC,
SERGEANT EVANS, EUTRILLA
TAYLOR, JULIE TOLLEY, ALAN
GREASON, KRISTOPHER STEECE,
CONNIE HORTON, WARDEN'S
ASSISTANT BEAULIEU, RUM
BATHO, SERGEANT DESCROCHE,
SERGEANT BAWKES, WILLIAM
STURM, OFFICER SMITH,
CASSONDRA BALBIERZ, SHERI
NEWCOMB, BILLY WEEMS,
KATHLEEN COULLARD, OFFICER
MAGAYHEE, VIRGINIA OLMSTEAD,
BRITTANY BEHM, OFFICER
BENSON, OFFICER COLLINS,
OFFICER GALLAGHER, WILLIAM
MYOTTE, OFFICER WESTON,
NELSON DUNCAN, LISA ADRAY,
RICHARD RUSSELL, JULIANA
MARTINO, and S. THOMPSON

                  Defendants.

_____/

**OPINION AND ORDER**
**GRANTING MDOC DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT (ECF NO. 68), AND**
**GRANTING DEFENDANT JULIANA MARTINO, NP'S MOTION FOR**
**SUMMARY JUDGMENT (ECF NO. 69)**

In this action, Plaintiff Cameron Tietz, a prisoner currently housed in the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (KCF) in Adrian, Michigan, asserts claims against 34 named Defendants, made up of prison medical providers (the "Corizon Defendants") and MDOC employees (the "MDOC Defendants"), pursuant to 42 U.S.C. § 1983, for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments. Following this Court's decisions granting in part and denying in part the Corizon Defendants' and MDOC Defendants' two motions to dismiss, the remaining claims are Plaintiff's Eighth Amendment claim against Defendants Juliana Martino, NP, and Lisa Adray, RN, regarding their treatment of Plaintiff's hernia beginning in April of 2018, and Plaintiff's First Amendment retaliation claim against certain MDOC Defendants regarding the alleged denial of medical care.

Now before the Court are (1) the MDOC Defendants' Motion for Summary Judgment (ECF No. 68), and (2) Defendant Juliana Martino, NP's Motion for Summary Judgment (ECF No. 69.) Both motions have been fully briefed. The Court

2

has determined that oral argument on Defendants' motions will not be necessary and will decide the matter on the parties' written submissions. E.D. Mich. L.R. 7.1(f)(2).

For the reasons set forth below, the Court GRANTS both motions for summary judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The background facts in this case are set forth in detail in the Court's two prior Opinions and Orders on the Defendants' motions to dismiss and thus the Court will not repeat those facts in full here. The Court will instead only discuss those facts necessary to rule on the remaining claims at issue in Defendants' two pending motions for summary judgment: (1) Count I, Plaintiff's Eighth Amendment claim against Defendants Juliana Martino, NP, and Lisa Adray, RN, regarding treatment they rendered to Plaintiff for his hernia in 2018; and (2) Count IV, limited to Plaintiff's First Amendment retaliation claim against the remaining MDOC Defendants regarding grievances filed by Plaintiff about the alleged denial of medical care. (*See* ECF No. 35, Opinion and Order, PageID.632.)

### A. Factual Background

Plaintiff was incarcerated at the MDOC's Macomb Correctional Facility (MRF) in Lenox, Michigan from July 31, 2014 to July 20, 2019. (ECF No. 68-2, Tietz Lock History, PageID.815.) He was transferred to the Chippewa Correctional

3

Facility (URF) in Kincheloe, Michigan on July 30, 2019, and remained there until October 12, 2021. (*Id.*)

Count I of Plaintiff's Amended Complaint asserts an Eighth Amendment Deliberate Indifference claim against "Defendants Corizon and Healthcare Officials" related to their treatment of Plaintiff's complaints of his hernia in 2018 when he was incarcerated at the Macomb Correctional Facility (MRF). (ECF No. 12, First Amended Compl. (FAC), Count I, PageID.251-53.) At that time, Defendant Juliana Martino, NP, was employed by Corizon Health, Inc. to provide prison healthcare services to inmates, and Defendant Lisa Adray, RN, was employed by the MDOC.

On April 29, 2018, Plaintiff submitted a Health Care Request Form (commonly referred to as a "kite") reporting that his hernia had grown in size and that a new painful hernia had formed. (ECF No. 69-1, 4/29/18 Kite, PageID.1091.) Plaintiff was seen and assessed by Defendant RN Adray on May 3, 2018. Based on her examination, RN Adray provided patient education to help reduce Plaintiff's discomfort, advised him to avoid exercise that aggravates his condition, and referred Plaintiff to a medical provider. (ECF No. 68-8, Decl. of RN Lisa Adray (RN Adray Decl.), ¶¶ 6-7, PageID.1041) (ECF No. 68-9, Medical Records, PageID.1067-68.)

Defendant NP Martino then saw and assessed Plaintiff on May 7, 2018. (ECF No. 69-3, 5/7/18 NP Martino Visit, PageID.1096-98.) Plaintiff reported to NP Martino that he had developed a hernia in the area of his navel and that the pain increases with palpitation, defecation, urination, and any type of abdominal muscle strain. NP Martino performed a physical examination of Plaintiff and noted that there was a visible bulge in the umbilical area. Plaintiff was advised to not work in the weight pit, to increase his fluid intake, lose weight, and increase cardio activity while the hernia was being assessed. NP Martino ordered an abdominal x-ray for further assessment. (*Id.*)

Plaintiff's x-ray was read on May 17, 2018 by Dr. Michael A. Henderson. (ECF No. 69-4, 5/17/18 X-ray Report, PageID.1100-01.) The findings were: "Limited study. No free air or mechanical obstruction. Retained feces, predominantly on the right side," and the impression was reported as "essentially unremarkable with some retained feces present." (*Id.*)

On May 26, 2018, Plaintiff submitted a kite related to his hernia, complaining of continuing pain. (ECF No. 69-5, 5/26/18 Kite, PageID.1103.) Defendant RN Adray saw Plaintiff on May 30, 2018, and Plaintiff requested surgery to repair his hernia. (ECF No. 68-8, RN Adray Decl. ¶10, PageID.1042) (ECF No. 68-9, Medical Records, PageID.1058.) RN Adray advised Plaintiff that Plaintiff's abdominal x-ray

5

showed no acute process and that because the hernia was not causing more serious concerns, a surgery would not be approved. Plaintiff became angry, demanded a surgical consultation, and left before further assessment could take place. (ECF No. 68-8, RN Adray Decl. ¶10, PageID.1042) (ECF No. 68-9, Medical Records, PageID.1058.) This was Plaintiff's last visit with RN Adray in 2018 regarding his hernia.

On June 14, 2018, Plaintiff called to healthcare to discuss his hernia pain and spoke to Jay Staph, RN. Plaintiff stated that he wanted "something other than an XRAY [sic] to fix this hernia." (ECF No. 69-7, 6/14/18 Chart Update, PageID.1107.) Plaintiff claimed that he was told "per NP Martino" that hernias will not be surgically repaired unless symptoms are worse than what he is exhibiting. He complained of difficulty having a bowel movement and RN Staph scheduled a follow up appointment for Plaintiff with a medical provider for June 19, 2018. (*Id.*).

On June 19, 2018, Plaintiff was examined by NP Martino. Plaintiff reported sharp, radiating pain from the umbilical area to the groin, aggravated by bowel movement, that his symptoms had worsened since the last evaluation in May, and that he also had constipation. (ECF No. 69-8, 6/19/18 NP Martino Visit, PageID.1109-11.) NP Martino considered the May 17, 2018 x-ray and performed a physical examination of Plaintiff. She assessed that Plaintiff's umbilical hernia had

worsened since his last appointment and she requested a surgical consultation. (*Id*.) (ECF No. 69-9, 6/19/18 Surgical Consult. Request, PageID.1113.)

Keith Papendick, MD denied the surgical consultation request that same day, deferring the surgery with the following alternate treatment plan (ATP): "Medical necessity not demonstrated at this time. Correct constipation and demonstrate resolution with abdominal films and re-evaluate." (ECF No. 69-10, 6/20/2018 Dr. Papendick Review, PageID.1115-16.)

On June 26, 2018, NP Martino performed a chart review of Plaintiff's medical records and, noting Dr. Papendick's decision, scheduled a follow-up visit with Plaintiff for June 28, 2018. (ECF No. 69-11, 6/26/18 Chart Review, PageID.1118.)

At Plaintiff's June 28, 2018 provider visit, NP Martino discussed the surgical consult denial with Plaintiff, the plan to manage his constipation, and explained that the surgical request could be resubmitted after managing his constipation. NP Martino reported that Plaintiff was disappointed but that he did not express anger or demand anything. Plaintiff was started on Dulcolax, Tylenol, and Wal-Profen. (ECF No. 69-12, 6/28/18 NP Martino Visit, PageID.1121-23.)

NP Martino next saw Plaintiff on July 30, 2018. Plaintiff reported pain with various actions and recurrent constipation despite his bowel regimen. His stool was liquid and soft but still hard to pass. NP Martino performed a physical exam and

review of symptoms and ordered an x-ray to evaluate the constipation and potentially resubmit the request for surgical consultation. (ECF No. 69-13, 7/30/18 NP Martino Visit, PageID.1125-29.)

Plaintiff's August 2, 2018, x-ray showed "constipation without evidence of an obstructive process." (ECF No. 69-14, 8/2/18 X-ray Report, PageID.1131.) NP Martino updated Plaintiff's chart on August 6, 2018 with a note that she could not submit a surgical consultation at that time until the constipation was cleared. (ECF No. 69-15, 8/6/18 Chart Review, PageID.1133.) NP Martino scheduled a digital rectal exam (DRE) to evaluate Plaintiff per "Dr. Schmidt's" recommendation. (*Id.*)

On August 27, 2018, NP Martino had a follow-up medical visit with Plaintiff. Plaintiff continued to report difficulty defecating and did not like how the Dulcolax made him feel. (ECF No. 69-16, 8/27/18 NP Martino Visit, PageID.1135-38.) A DRE was performed, and no obstruction was appreciated. NP Martino changed Plaintiff's medication to magnesium citrate instead of Dulcolax and she requested a gastrointestinal (GI) consult. (*Id.*) (ECF No. 69-17, GI Request, PageID.1140-41.)

Dr. Papendick denied this GI consultation request on August 27, 2018, stating: "Medical necessity not demonstrated at this time. Consider treating with senna 8.6 four tabs bid and do not hold until there is proof of resolution on subsequent

abdominal films." (ECF No. 69-18, 8/27/18 Dr. Papendick GI Consult. Denial, PageID.1143-44.)

Kim Farris, PA next saw Plaintiff on October 10, 2018. Plaintiff reported that his symptoms had not changed. Ms. Farris ordered another x-ray for evaluation. (ECF No. 69-19, 10/10/18 PA Farris Visit, PageID.1146-49.)

NP Martino saw Plaintiff on October 25, 2018. Plaintiff reported that he misunderstood his treatment plan and NP Martino discussed this with him. (ECF No. 69-20, 10/15/18 NP Martino Visit, PageID.1151-55.) Specifically, Plaintiff stated that he misunderstood that his medication (senna) was changed to "restricted medication line" (RML)[1] and that he would become compliant in an effort to clear the constipation and that he would give the magnesium citrate "a try and see if it helps." (*Id.*) NP Martino also noted the x-ray report, which showed constipation without evidence of obstruction. The plan of action was the same as before; there could not be surgical consultation until the constipation was cleared, and Plaintiff stated that he understood. (*Id.*). This was Plaintiff's last visit with NP Martino in 2018 regarding his hernia.

---

[1] As Defendant NP Martino explains in her brief, if a medication is RML, the patient must come to the mediation line in healthcare to get the medication, as opposed to "keeping on person" (KOP). (ECF No. 69, Def. NP Martino brief, PageID.1084 n.2.)

The MDOC Defendants state that Plaintiff filed 25 grievances while he was incarcerated at MRF and URF from 2018 to 2021. (ECF No. 68-5, Grievances.) Defendants assert that Plaintiff failed to name several of the individual MDOC Defendants in any grievances, and that he failed to grieve any issues relating to the denial of medical care with regard to the remaining individual MDOC Defendants.

### B. Procedural History

On March 27, 2020, Plaintiff, through his counsel, filed a Complaint initiating this matter. (ECF No. 1, Complaint.) Plaintiff filed his Amended Complaint on June 29, 2020, asserting five claims against 34 defendants – including 30 current or former MDOC employees, Corizon Health, Inc., and three Corizon employees – under 42 U.S.C. § 1983 for violations of Plaintiff's First and Eighth Amendment rights, retaliation, and conspiracy. (ECF No. 12, FAC.)

Following this Court's decisions granting in part and denying in part the Corizon Defendants' and MDOC Defendants' two motions to dismiss, Plaintiff's remaining claims are: (1) Count I against Defendants NP Martino and RN Adray regarding their treatment of Plaintiff's hernia in 2018; and (2) Count IV, limited to First Amendment retaliation claims against certain MDOC Defendants regarding alleged denial of medical care. (ECF No. 29, Opinion and Order) (ECF No. 35, Opinion and Order.)

10

1.  **MDOC Defendants' Motion for Summary Judgment (ECF No. 68)**

On December 13, 2023, the MDOC Defendants filed their Motion for Summary Judgment. (ECF No. 68.) The MDOC Defendants argue that RN Adray is entitled to qualified immunity because she did not act with deliberate indifference in her care of Plaintiff in 2018. The MDOC Defendants also argue that the remaining individual MDOC Defendants – Robert Leduc, Julie Tolley, Robert Beaulieu, Shane Thompson, Robert Batho, Jason Bawks, William Sturm, Scott Smith, Sheri Newcomb, Billy Weems, Kathleen Coullard, Kevin McGehey, Virginia Olmstead, Brittany Behm, Justin Benson, Officer Collins, Deborah Gallagher, William Myotte, and Roger Weston – are entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies against those defendants under the Prison Litigation Reform Act (PLRA), and (2) those defendants did not take an adverse action against Plaintiff and Plaintiff cannot establish a causal connection between his protected conduct and any alleged adverse actions by the MDOC Defendants. The MDOC Defendants further contend that Plaintiff's claim for injunctive relief is moot because he is no longer housed at MRF or URF.

Plaintiff filed a Response in opposition to the MDOC Defendants' motion for summary judgment. (ECF No. 70.) Plaintiff conceded that this Court should dismiss his First Amendment claims against certain MDOC Defendants, and that his claim

11

for injunctive relief should be dismissed as moot. Plaintiff disputes, however, that RN Adray is entitled to qualified immunity. Plaintiff also disputes that he failed to exhaust his administrative remedies against the remaining five MDOC Defendants or that those Defendants did not take an adverse action against Plaintiff causally related to his protected conduct.

The MDOC Defendants filed a Reply brief in support of their motion for summary judgment, reiterating their arguments as to the remaining Defendants. (ECF No. 72)

### 2. Defendant Juliana Martino, NP's Motion for Summary Judgment (ECF No. 69)

On December 13, 2023, Defendant NP Martino filed her Motion for Summary Judgment. (ECF No. 69.) NP Martino argues that Plaintiff cannot sustain an Eighth Amendment claim against her because it is undisputed that she was not deliberately indifferent to Plaintiff's umbilical region hernia. NP Martino contends that Plaintiff cannot meet the subjective component of the deliberate indifference standard and that his allegations only amount to second-guessing NP Martino's medical judgment.

Plaintiff filed a Response in opposition to NP Martino's summary judgment motion. (ECF No. 71.) Plaintiff asserts that the medical records demonstrate that he has a serious medical need, thus satisfying the objective component of his Eighth

Amendment claim, and that NP Martino unreasonably treated that medical condition.

NP Martino did not file a Reply brief.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is material if its resolution will affect the outcome of the lawsuit." *F.P. Dev., LLC v. Charter Twp. of Canton, Michigan*, 16 F.4th 198, 203 (6th Cir. 2021). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, no genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, if the nonmoving party will bear the burden of proof on a claim, the movant "need only demonstrate that the nonmoving party has failed to

13

'make a showing sufficient to establish the existence of an essential element' of that claim." *Id.* (quoting *Celotex*, 477 U.S. at 322). Thereafter, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[T]he non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). That evidence must be capable of presentation in a form that would be admissible at trial. *Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009). Ultimately, the Court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[The] general rule [is] that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (quotation marks omitted)).

### III.   ANALYSIS

**A. Plaintiff Concedes His First Amendment Claims Against Certain MDOC Defendants Should be Dismissed and That His Injunctive Relief Claim Should be Dismissed as Moot**

In his Response brief, Plaintiff concedes that his First Amendment retaliation claim against MDOC Defendants Beaulieu, Thompson, Bawks, Sturm, Smith, Newcomb, Weems, Coullard, McGehey, Olmstead, Behm, Collins, Gallagher, and Weston should be dismissed. (ECF No. 70, Pl. Resp., PageID.1164.) Accordingly, the Court will dismiss Plaintiff's First Amendment claims against those MDOC Defendants. Plaintiff's claims remain against MDOC Defendants LeDuc, Tolley, Batho, Benson, Myotte, and Adray, and NP Martino.

Plaintiff also concedes that his claim for injunctive relief in the form of a transfer is now moot. (ECF No. 70, Pl. Resp., PageID.1175.) Therefore, the Court will dismiss Plaintiff's request for injunctive relief as moot.

**B. Plaintiff Failed to Exhaust His First Amendment Retaliation Claim Against MDOC Defendants LeDuc, Tolley, Batho, Benson and Myotte**

The MDOC Defendants argue that Plaintiff has failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) as to Defendants LeDuc, Tolley, Batho, Benson, and Myotte. The MDOC Defendants assert that Plaintiff did not file any grievance against Defendants LeDuc, Batho,

15

Benson, and Myotte, and while he did file two grievances against Defendant Tolley, neither of those grievances concerned issues related to Plaintiff's medical care.

### 1. The PLRA and MDOC Policy Directive 03.02.130

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original). A prisoner's grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).

Requiring exhaustion allows prison officials a chance to resolve disputes about the exercise of their responsibilities before being haled into court and also produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. "The level of detail necessary in a grievance to comply with

16

the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford*, 548 U.S. at 97. Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97.

MDOC Policy Directive (PD) 03.02.130 (in versions with Effective Dates of March 5, 2007 and March 18, 2019) sets forth the applicable grievance procedures for inmates in MDOC custody such as Plaintiff at the times relevant to his Complaint. (ECF No. 68-3, MDOC PD 03.02.130 (Effective Date March 5, 2007) and ECF No. 68-4, MDOC PD 03.02.130 (Effective Date March 19, 2007).) Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id.*) If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id.*) If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id.*) The Step III form shall be

17

sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id.*)

### 2.  Plaintiff's Grievances

Plaintiff filed 25 grievances while he was housed at MRF and URF from 2018 to 2021. (ECF No. 68-5, Grievances) (ECF No. 68-6, Grievance Chart.) The MDOC Defendants state that Plaintiff did not file any grievance naming or identifying Defendants LeDuc, Batho, Benson, and Myotte, and thus Plaintiff failed to exhaust his administrative remedies as to those Defendants, and those Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claims.

Plaintiff responds that he filed a number of grievances regarding the failure to provide medical care (without identifying which grievances those are or who they named) and that the existence and volume of these grievances satisfies the PLRA's exhaustion requirement. He otherwise does not address the failure of any grievance to name or identify Defendants LeDuc, Batho, Benson, and Myotte.

Viewing the evidence in the light most favorable to Plaintiff, the Court agrees with the MDOC Defendants that Plaintiff has failed to exhaust his administrative remedies as to MDOC Defendants LeDuc, Batho, Benson, and Myotte by failing to file a grievance against them.

Relevant here, MDOC PD 03.02.130 requires prisoners to provide the following information at Step I of the grievance procedure:

> The issues [underlying the grievance] should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and *names of all those involved in the issue being grieved are to be included*.

(ECF No. 68-3, PD 03.02.130 ¶ R (underlining in original, italics added)) (ECF No. 68-4 PD 03.02.130 ¶ S (underlining in original, italics added).) The Sixth Circuit Court of Appeals has stated that "a prisoner ordinarily does not comply with [PD 03.02.130] – and therefore does not exhaust his administrative remedies under the PLRA – when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.")); *see also Alexander v. Jackson*, 440 F. Supp. 2d 682, 685 (E.D. Mich. 2006) ("To satisfy the exhaustion requirement, an administrative grievance must be factually specific as to both the person and the acts complained of. If a particular

19

defendant has not been specifically named in a grievance, the claim as to that defendant has not been exhausted.") (citing *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001)). This is because "the purpose of the PLRA's exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (internal quotation marks and end citation omitted).

Plaintiff has not provided any evidence that he has filed any grievance naming MDOC Defendants LeDuc, Batho, Benson, and Myotte, or any grievance otherwise giving those MDOC Defendants notice that he was asserting any misconduct by them related to his medical care. Plaintiff did file several grievances related to his healthcare during the relevant time period, but those grievances named specific Corizon and/or MDOC healthcare personnel, not LeDuc, Batho, Benson, Myotte, or Tolley. (*See* ECF NO. 68-6, Grievance Chart, PageID.964-66) (ECF No. 68-5, Grievances.) Viewing the evidence in the light most favorable to Plaintiff, those grievances therefore do not exhaust Plaintiff's administrative remedies as to MDOC Defendants LeDuc, Batho, Benson and Myotte. *See Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149, at *3 (6th Cir. Sept. 8, 2022) (collecting cases in which courts have declined to find waiver of the requirement to name the defendant in the Step I

20

grievance when the prisoner identifies one or more individuals in a Step I grievance and does not name others until later in the grievance process or until a complaint is filed in a lawsuit against them). Courts reason that "prison officials would naturally assume that [the plaintiff] complied with the requirement to name those involved [at Step I], and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit." *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

While failure to exhaust administrative remedies is an affirmative defense that must be raised and proved by a defendant, *Bock*, 549 U.S. at 218; *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015), "a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Taylor v. Purdom*, 673 F. Supp. 3d 872, 876 (E.D. Mich. 2023) (internal quotation marks and citation omitted). Because Plaintiff failed to name MDOC Defendants LeDuc, Batho, Benson, and Myotte in any grievance he filed during the relevant time period, much less in those grievances he did file related to his healthcare, Plaintiff's First Amendment retaliation claim against those Defendants will be dismissed without prejudice for failure to exhaust administrative remedies. *See Harp v. Austin*, No. 21-12446, 2022 WL 3365844, at *4 (E.D. Mich. July 19, 2022) (dismissal for failure to

exhaust was appropriate because the defendant, not being named in the grievance, "could not have known that she was allegedly involved in [the] grievance"), *report and recommendation adopted by* 2022 WL 3362505 (E.D. Mich. Aug. 15, 2022); *Frisby v. Unknown Cobar*, No. 22-cv-00087, 2023 WL 4872567, at \*5-6 (W.D. Mich. May 8, 2023) (plaintiff failed to exhaust grievance against named defendants where he neither named them in his Step I grievance, nor submitted "any facts indicating that each Defendant was involved[ ]," ... thus failed to "place the MDOC on notice that his grievance was against the named Defendants"), *report and recommendation adopted by* 2023 WL 4865084 (W.D. Mich. July 31, 2023). *See Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006) ("[T]he appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

The MDOC Defendants acknowledge that Plaintiff did file two grievances against MDOC Defendant Tolley. (ECF No. 68-5, Grievances MRF-19-07-1067-17Z and MRF-19-08-113-28A, PageID.923-30.) However, neither of those two grievances against Tolley were in any way related to the alleged denial of healthcare. They instead both related to Plaintiff's concern that Tolley would transfer Plaintiff from MRF "for religious discrimination." (*See id.*) Plaintiff has failed to offer any evidence to the contrary.

Accordingly, just as with MDOC Defendants LeDuc, Batho, Benson, and Myotte, Plaintiff has failed to show that he exhausted the administrative process with regard to his claims against MDOC Defendant Tolley related to his health care, and Plaintiff's claims against Tolley are dismissed without prejudice on that basis. *See Bell*, 450 F.3d at 653.

### C. Alternatively, Plaintiff's First Amendment Retaliation Claim Against MDOC Defendants LeDuc, Tolley, Batho, Benson, and Myotte Should Be Dismissed on the Merits

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

To prevail on a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. ---, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause,

23

meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260 (finding that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

The MDOC Defendants argue that even if Plaintiff had not failed to exhaust his administrative remedies with regard to his First Amendment retaliation claims against MDOC Defendants LeDuc, Tolley, Batho, Benson, and Myotte, those claims should be dismissed because Plaintiff cannot satisfy the second and third elements of the *Thaddeus-X* test. Specifically, the MDOC Defendants argue that there is no evidence that those Defendants took an adverse action against Plaintiff, and Plaintiff cannot establish a causal connection between his protected conduct and any alleged adverse actions by the Defendants. The MDOC Defendants state that none of the paragraphs in Plaintiff's Amended Complaint allege that LeDuc, Tolley, Batho, or Myotte interfered with Plaintiff's medical care (*see* ECF No. 12, FAC), and that Plaintiff has failed to come forward with any evidence following discovery to support his claim that MDOC Defendants LeDuc, Tolley, Batho, Benson, and Myotte interfered with his medical care. In fact, Plaintiff admitted in his deposition that he could not even recall Benson and was unclear whether he remembered

24

Myotte. (ECF No. 68-7, Deposition of Cameron Tietz, at pp. 35-36, 41, PageID.1002-03, 1008.) The MDOC Defendants thus argue that LeDuc, Tolly, Batho, Benson, and Myotte are entitled to summary judgment on the merits of Plaintiff's First Amendment retaliation claim against them.

Plaintiff broadly argues in response only that he filed grievances regarding the claimed denial of medical care against unidentified "Defendants," that "Defendants repeatedly engaged in adverse actions," and that "a reasonable juror could infer from the chronology of events in this case that Defendant[s] knew of and were motivated by Plaintiff's past and pending grievances, tailoring Plaintiff's medical care and dealings with Plaintiff to both retaliate and avoid any future grievances." (ECF No. 70, Pl. Resp., PageID.1167-71.) Plaintiff asserts "[c]onnecting the timeline of events, Plaintiff's deposition testimony, medical care requests, kites, and grievances, a reasonable jury could conclude that based upon the specific allegations, Defendants engaged in retaliatory conduct." (*Id.* PageID.1170.) However, Plaintiff fails to specifically cite to any deposition testimony or any specific documents or allegations in support of his argument.

It is well settled that the party opposing a summary judgment motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson*, 477 U.S. at 256-57. Rather, because

25

he "has had a full opportunity to conduct discovery," a plaintiff must "present affirmative evidence" supporting his allegations. *Id.* at 257; *Expert Masonry, Inc. v. Boone Cnty.,* 440 F.3d 336, 341 (6th Cir. 2006) (the nonmoving party "must present significant probative evidence in support of its complaint to defeat a motion for summary judgment"). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)); *see also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n.1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues.").

The Court finds that Plaintiff here fails to offer any summary judgment evidence in support of his blanket assertion that Defendants LeDuc, Tolly, Batho, Benson, and Myotte retaliated against him with regard to the alleged denial of medical care. Plaintiff in fact fails to even mention the names of Defendants LeDuc, Tolly, Batho, Benson, and Myotte in the body of his brief, much less cite to summary judgment evidence of their purported involvement in his First Amendment

26

retaliation claim. And while Plaintiff broadly refers to the timing or "chronology of events in this case," the Sixth Circuit Court of Appeals has stated that "this evidence [of temporal proximity] alone is not sufficient to meet [Plaintiff]'s burden to show that the filing of grievances was a substantial or motivating factor for [the alleged adverse action]." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). *See also Hill*, 630 F.3d at 476 ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive.") (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)). This is even more true when the purported grievances do not even mention the Defendants.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court finds that MDOC Defendants LeDuc, Tolly, Batho, Benson, and Myotte are entitled to summary judgment as to the merits of Plaintiff's First Amendment retaliation claim against them, and those claims are dismissed with prejudice.

### D. Plaintiff's Eighth Amendment Claims Against Defendants NP Martino and RN Adray

Plaintiff alleges that Defendants NP Martino and RN Adray violated his rights under the Eighth Amendment not to be subjected to cruel and unusual punishment by failing to treat Plaintiff's hernia condition in 2018.

27

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An Eighth Amendment deliberate indifference claim has two components, one objective – a " 'sufficiently serious' medical need" – and the other subjective – a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

Specifically, the objective component asks whether the prisoner faced a risk of sufficiently serious harm. *Farmer*, 511 U.S. at 834 (noting that "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"); *see also Blackmore*, 390 F.3d at 895. To prove this objectively serious harm, a prisoner must first establish that he or she has "serious medical needs," *Estelle*, 429 U.S. at 106, and, if the prisoner has received some care for that serious medical need and he seeks redress based on the inadequacy of that care, he must show that such care was "so

28

grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable as to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005)). "This will often require 'expert medical testimony ... showing the medical necessity for' the desired treatment and 'the inadequacy of the treatments' the inmate received." *Id.* at 737-38 (citations omitted).

Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702. "But mere malpractice does not violate the Eighth Amendment." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) (citing *Estelle*, 429 U.S. at 106); *Rhinehart*, 894 F.3d at 738 ("A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.").

In addition, because § 1983 does not permit a plaintiff to impose vicarious liability on a defendant for another defendant's actions, a plaintiff must independently establish these objective and subjective elements for each medical provider he sues. *Phillips*, 14 F.4th at 536.

### 1.  MDOC Defendant Lisa Adray, RN

MDOC Defendant RN Adray argues that she is entitled to qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claim against her.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine "shields 'government officials performing discretionary functions' from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Qualified immunity thus balances "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Although a defendant ordinarily bears the burden of proof for an affirmative defense, where a defendant raises the defense of qualified immunity, the plaintiff

30

"bears the burden of showing that [the] defendant[ ] [is] not entitled to qualified immunity." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). Thus, in opposing a defendant's claim of qualified immunity, a plaintiff must show: (1) the defendant violated a constitutional right based on the facts alleged, and (2) that the right was clearly established. *Plumhoff v. Rickard*, 572 U.S. 765, 773-74 (2014); *Pearson*, 555 U.S. at 232. The district court may address the qualified immunity analysis in any order. *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016). If the plaintiff is unable to establish the violation of a constitutional right, the Court's inquiry ends, and the defendant is entitled to immunity. *Perez v. Oakland Cnty.*, 466 F.3d 416, 426-27 (6th Cir. 2006). However, even if the plaintiff establishes a constitutional violation, he still bears the burden of showing that the constitutional right was clearly established at the time of the violation. *Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 765 (6th Cir. 2021).

RN Adray argues that Plaintiff cannot establish that Adray's actions violated the Eighth Amendment or that she violated a clearly established constitutional right. She states that the evidence shows that she saw Plaintiff on May 3, 2018 because of his hernia, that she referred him to a higher-level medical provider, and that Plaintiff was in fact examined by NP Martino on May 7, 2018. (ECF No. 68-8, RN Adray

Decl., ¶¶ 6-8, PageID.1041) (ECF No. 68-9, Medical Records, PageID.1065-68.) RN Adray then saw Plaintiff again on May 30, 2018, for complaints about his hernia pain and his request for a surgical repair. RN Adray advised Plaintiff that his abdominal x-ray did not show an acute process and that as long as his  hernia was not causing serious concerns his surgery would not be approved. Plaintiff became angry and left before RN Adray would take his vital signs or perform an assessment. (ECF No. 68-8, RN Adray Decl. ¶ 10, PageID.1042) (ECF No. 68-9, Medical Records, PageID.1058.) NP Martino subsequently evaluated Plaintiff on June 19, 2018, and submitted a surgical consult. (ECF No. 68-8, RN Adray Decl. ¶ 12, PageID.1042) (ECF No. 68-9, Medical Records, PageID.1051-55.) Dr. Papendick subsequently denied the request for surgery because it was not medically necessary. (ECF No. 68-8, RN Adray Decl. ¶ 13, PageID.1042) (ECF No. 68-9, Medical Records, PageID.1050.) NP Martino informed Plaintiff of Dr. Papendick's decision on June 28, 2018. (ECF No. 68-8, RN Adray Decl. ¶¶ 14-15, PageID.1043) (ECF No. 68-9, Medical Records, PageID.1045-49.)

Defendant RN Adray argues that, based on the record evidence above, Plaintiff cannot satisfy the subjective component of the deliberate indifference test because that evidence establishes that she provided care to Plaintiff and referred him to higher level medical providers and then a doctor decided surgery was not

necessary. "This [subjective component] part asks: Did the official know of and disregard the serious medical need?" *Phillips*, 14 F.4th at 535 (citing *Farmer*, 511 U.S. at 834, 838-39). "In this healthcare setting, a [nurse] must first know of the facts that show the serious medical need and must personally conclude that this need exists. The [nurse]'s response next must 'consciously disregard[ ]' the need." *Id.* (internal and end citations omitted); *see also Rhinehart*, 894 F.3d at 738 ("This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, and that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it.") (quoting *Comstock*, 273 F.3d at 703).

"A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842). But "[a] [medical provider's] errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Id.* Accordingly, "[w]here the plaintiff has received some medical treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (citation omitted); *Rhinehart*, 894 F.3d at 738 ("[W]hen a claimant challenges the adequacy of an inmate's treatment, 'this Court is deferential

33

to the judgments of medical professionals.'") (citation omitted). However, "[a] plaintiff can nevertheless satisfy this [subjective] standard by demonstrating that a medical professional 'consciously expos[ed] the patient to an excessive risk of serious harm' in administering treatment, or rendered medical care 'so woefully inadequate as to amount to no treatment at all." *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 568 (6th Cir. 2020) (internal and end citations omitted).

MDOC Defendant RN Adray argues that this case is a classic example of when a prisoner has done nothing more than dispute the course of his treatment. The Court agrees. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's medical records show that he received medical treatment for his hernia condition, including the two times his saw RN Adray, and that he simply disagrees with the providers' course of treatment. "[A]llegations that more should have been done by way of diagnosis and treatment and suggest[ions] of other options that were not pursued raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rhinehart*, 894 F.3d at 741 (punctuation modified).

In his Response brief, Plaintiff argues only that his right to medical care was clearly established – an issue the MDOC Defendants do not raise or dispute in their motion for summary judgment and thus an issue this Court need not address. Plaintiff otherwise merely continues to dispute the adequacy of his treatment, arguing that

34

"Defendants continued to unreasonably ignore, delay, or inadequately respond to Plaintiff's pleas for help." (ECF No. 70, Pl. Resp., PageID.1174.) However, as above, he fails to cite any record evidence in support of his response to RN Adray's arguments.

Accordingly, the Court finds that the summary judgment evidence shows that RN Adray treated Plaintiff and made medical judgments based on her experience and the evidence before her. Plaintiff has failed to establish that MDOC Defendant RN Adray acted with deliberate indifference in her treatment of Plaintiff's hernia condition in 2018. RN Adray is therefore entitled to summary judgment on Plaintiff's Eighth Amendment claim against her.

## 2. Defendant Juliana Martino, NP

Defendant NP Martino similarly argues that Plaintiff cannot meet the subjective component of the deliberate indifference test and that Plaintiff's allegations amount to nothing more than second guessing NP Martino's medical judgment in treating his hernia condition.

NP Martino contends that the summary judgment evidence shows that from May to October 2018, she treated Plaintiff, continued to monitor him, prescribed and modified his medications, and sought specialist care for him. NP Martino first became aware of the Plaintiff's hernia on May 7, 2018, and she ordered an x-ray for

35

further evaluation of Plaintiff's condition. (ECF No. 69-3, NP Martino Visit, PageID.1096-98) (ECF No. 69-4, 5/17/18 X-ray, PageID.1100.) After that, she saw him in person on June 19, June 28, July 30, August 27, and October 25, 2018 and did chart reviews on June 26 and August 6, 2018. (ECF Nos. 69-8, 69-11, 69-12, 69-13, 69-15, 69-16, 69-20.) Other healthcare providers, such as Kim Farris, PA and MDOC Defendant RN Adray, were also seeing Plaintiff during this time. (ECF Nos. 69-2, 69-6, 69-19.) Plaintiff was on Tylenol as of May 7, 2018 and NP Martino prescribed Plaintiff Dulcolax on June 28, 2018 to treat the painful stools/constipation. (ECF Nos. 69-3, 69-12.) NP Martino modified Plaintiff's medications twice in the relevant time period, to magnesium citrate and then senna 8.6. To the extent Plaintiff contends that he needed surgical repair for his hernia, NP Martino requested surgical and GI consultations. (ECF Nos. 69-9, 69-17.) Dr. Papendick reviewed and denied both of those requests and provided an alternate treatment plan. (ECF Nos. 69-10, 69-18.) NP Martino complied with this treatment plan, specifically by treating Plaintiff's constipation so that a surgical consult could be resubmitted.

In his Response brief, Plaintiff acknowledges that NP Martino treated him multiple times in 2018 for his hernia condition, and that she prescribed him a multitude of medications over the course of that treatment. Plaintiff argues only that

the record demonstrates a genuine dispute over whether Defendants' response to Plaintiff's serious medical need was reasonable. (ECF No. 71, Pl. Resp., PageID.1189-90 (stating "the disagreement in this case is more properly characterized as a dispute over an unreasonable course of treatment throughout the duration of Plaintiff's incarceration[.]").

Thus, it is undisputed that Plaintiff did receive some treatment for his medical condition. And, as explained above, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). To make out a claim of deliberate indifference when a plaintiff has received some treatment, the plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

That Plaintiff disagrees with the medical judgment exercised by his treatment providers is insufficient to establish an Eighth Amendment violation. *See Westlake*, 537 F.2d at 860 n.5; *see also Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) ("An inmate's 'disagreement with the testing and treatment he has received ... does not rise to the level of an Eighth Amendment violation.' " (quoting *Rhinehart*, 894 F.3d at 740).

Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant NP Martino is entitled to summary judgment on Plaintiff's Eighth Amendment claim against her.

38

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** the MDOC Defendants' Motion for Summary Judgment (ECF No. 68) and **DISMISSES** Plaintiff's claims against them **WITH PREJUDICE**.

The Court **FURTHER GRANTS** Defendant NP Martino's Motion for Summary Judgment (ECF No. 69) and **DISMISSES** Plaintiff's claims against her **WITH PREJUDICE**.

This is a final order that closes the case.

IT IS SO ORDERED.

Dated: April 3, 2024                              s/ Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge

39